### In re KINNANE CO.

(District Court, S. D. Ohio, W. D. January 4, 1915.)

#### No. 5387.

1. BANKRUPTCY ⊕⇒384—COMPOSITION—CONFIRMATION—ACCEPTANCE BY CREDITORS.

While the approval of a bankrupt's composition offered by the majority of the creditors is prima facie evidence that it was for the best interests of all, the court can, even if there be no objection, inquire whether it conforms to the requirements of Bankr. Act July 1, 1898, c. 541, § 12d, 30

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Stat. 549 (Comp. St. 1913, § 9596), and, if it does not, must refuse to confirm.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 590–592; Dec. Dig. ☜384.]

2. BANKRUPTCY ☜376—COMPOSITION—EQUALITY.

Since the aim of the bankrupt law is equality between creditors, a composition must be for the best interest of all of the creditors, and not of certain ones of a certain class.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 598–600, 602; Dec. Dig. ☜376.]

3. BANKRUPTCY ☜376—COMPOSITION—CONSTRUCTION OF STATUTE.

The provisions of the Bankruptcy Act relating to composition must be strictly construed, as in derogation of the common law, since they compel dissenting creditors to accept the percentage agreed upon by majority in number and amount.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 598–600, 602; Dec. Dig. ☜376.]

4. BANKRUPTCY ☜387—COMPOSITION—CONFIRMATION—EFFECT.

A confirmation of a composition offered by a bankrupt operates as a discharge of the bankrupt; but it destroys the remedy only, not the indebtedness.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 603–605, 607–616; Dec. Dig. ☜387.]

5. BANKRUPTCY ☜387—COMPOSITION—FAILURE OF CONSIDERATION.

Where a bankrupt's composition provides for future payments, failure to make the deferred payments revives the entire debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 603–605, 607–616; Dec. Dig. ☜387.]

6. BANKRUPTCY ☜376—COMPOSITION—CONFIRMATION.

An offer of composition by a bankrupt corporation, under the provisions of which two banks were to waive a cash payment and were to advance the money necessary to make the cash payment to other creditors, and in return were to receive as security a second mortgage upon the real estate of the corporation and an exclusive right to look to the personal property and the security of the indorsement of the principal stockholders, and the other creditors were to take as their sole security for the payment of the balance of their claims a third mortgage on the real estate executed to the trustee, who was to act as directed by the majority of the creditors, will not be confirmed, since it gives the banks an unfair preference, and also gives the creditors no negotiable evidence of their claims, and requires them to be governed as to the enforcement thereof by the majority vote, after the bankruptcy proceedings have been closed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 598–600, 602; Dec. Dig. ☜376.]

7. BANKRUPTCY ☜377—COMPOSITION—ACCEPTANCE BY CREDITOR—NEW OFFER.

The fact that a former offer of composition, confirmation of which was refused because of irregularity in the proceedings, was accepted by a creditor, does not preclude him from objecting to a subsequent offer in substantially the same terms.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 586–588; Dec. Dig. ☜377.]

In Bankruptcy. Proceedings against the Kinnane Company. On application to confirm composition (217 Fed. 488). Confirmation denied.

Kramer & Bettman, of Cincinnati, Ohio, for bankrupt.

Lawrence Maxwell, of Cincinnati, Ohio, Watson, Stouffer, Davis & Gearhart, of Columbus, Ohio, Saul S. Myers, of New York City, Simon Fleischmann, of Buffalo, N. Y., and Floyd A. Johnston and Stafford & Arthur, all of Springfield, Ohio, for creditors opposed to confirmation of composition.

Rosenberg, Levis & Ball, of New York City, for creditors favoring confirmation of composition.

SATER, District Judge. When the first offer of composition of the Kinnane Company (hereinafter called the Company) was rejected on account of a defect in procedure (217 Fed. 488), the court expressed the opinion that, inasmuch as a majority of the creditors in number and as to the amount of indebtedness were apparently favorable to a composition, the privilege of submitting a new offer should be accorded. The Company thereupon submitted to its creditors the following offer of composition:

"Now comes the respondent, the Kinnane Company, and offers the following terms of composition to its creditors: Forty per cent. (40%) cash and five per cent. (5%) additional in two notes: Two and one-half per cent. (2½%) maturing in three months from date, and two and one-half per cent. (2½%) maturing in six months from date. And in addition to above to give to J. L. Plummer as trustee for the benefit of its creditors, or to such other trustee as a majority in number and amount may designate in writing, a third mortgage in the usual form upon all of its real estate to secure the remaining fifty-five per cent. (55%) of their claims, said 55% to be a charge against said real property only, and not an individual liability of said company.

"Such mortgage shall be subject to the $65,000 first mortgage of the Springfield Savings Society and other existing liens, and to a second mortgage to be given the First National Bank and Lagonda National Bank of Springfield, Ohio, to secure 40% of their existing claims, or about $16,000, as to which they shall waive payment in cash, and to secure moneys advanced or to be advanced by them to finance the composition and the business, the aggregate of such advances not to exceed $30,000. Said second mortgage shall provide that said banks will, so far as same can be done without prejudice to their mortgage security, exhaust such lawful remedies as they may have against other assets of said Company before foreclosure of their mortgage, so as to protect as far as practicable the third mortgage; and the same course shall be adopted by said banks when said third mortgage becomes due, if the trustee therein so requests.

"Said third mortgage shall be due in five years from date of confirmation of this composition without interest, but shall be subject to redemption during the first three years at $25,000 and during the last two years at $27,000. The existing liens (other than Savings Society mortgage) and interest maturing on the first and second mortgages shall be paid out of the other assets of the Company, and if not paid at the end of six months, except such mechanics' liens as may then be in litigation, said third mortgage shall become due. Trustee's compensation shall be two per cent. on amounts realized and necessary expenses, and subject thereto all amounts realized shall be distributed promptly among creditors ratably in proportion to their claims, and upon maturity of said mortgage said trustee shall take such steps as a majority in number and amount of the creditors secured thereby shall direct."

The Company's notes for about $40,000, indorsed by Mrs. Kinnane and Kahn, who were the principal owners of the Company's stock, were held by two Springfield banks. To secure the continuation of the Company's business, as well as to protect themselves,

the banks entered into an agreement with such sureties, which provided for their acceptance of the composition, and in addition thereto, among other things, as follows: The Company's notes for the $46,000, which were to be secured by a second mortgage, were to be indorsed by Mrs. Kinnane and Kahn, and as they were indorsers on all of the notes, aggregating $40,000, held by the banks at the time the bankruptcy proceeding was begun, they were to execute and deliver their notes to such banks for the residue of the Company's indebtedness to the banks over and above the 45 per cent. offered in composition, and to secure such notes were to deposit with a named trustee as collateral their stock in the Company, except such shares as might be necessary to qualify its directors. These notes were also to be secured by a second mortgage on Mrs. Kinnane's real estate. She and Kahn, each being a creditor of the Company, were also to assign their claims against it to the banks; such assignment and the mortgage on Mrs. Kinnane's real property to be subject, however, to the right, if any, of the Metropolitan Bank of New York City to a proportionate share in her assets and those of Kahn. If Kahn withdrew from the business, he was to be released as an indorser; but his stock in the Company was still to remain liable for the notes indorsed by him. The agreement between the banks and Mrs. Kinnane and Kahn was conditioned on the Company effecting a composition with its creditors and the confirmation of the same by the court.

The requisite number of creditors accepted the Company's offer of composition. A respectable number of nonassenting creditors objected to its confirmation on various grounds, only one of which will be hereinafter noticed. The evidence before the court is much more voluminous than on the former hearing and brings new facts upon the record. The insolvency of the Company is sufficiently established. The question now for decision is: Shall the composition be confirmed?

The former proposed composition, which differed slightly from that now under consideration, was assailed on the ground that it contravened the letter and spirit of the Bankruptcy Act. Counsel, however, did not discuss the question in detail or at length. As to certain features the former offer was not considered objectionable, but it was not seriously considered or critically analyzed, for the reason that the determination of the validity of its provisions was not necessary to a decision of the case. The legality of the offer is again assailed, and, while it has not been exhaustively treated by counsel, the question presented lies at the threshold of the case and is the first to challenge consideration. A statement of certain well-established principles will, on account of their relevancy, be helpful.

[1, 2] It is the duty of the court to investigate the facts relating to a composition independently of any agreement the creditors may have made. Collier, Bankr. (10th Ed.) 297; Black, Bankr. § 654, p. 1352. It should confirm, "if satisfied" that the composition does not run counter to any of the three conditions named in section 12d of the Bankruptcy Act. The consent of the requisite number of cred-

itors is prima facie evidence that the composition is for the best interest of all, and the burden of proof is on objecting creditors to show why it should not be confirmed. Loveland, Bankr. (4th Ed.) 1269; Collier, Bankr. 297. Courts reluctantly deny the wishes of a legally constituted majority. If, however, the composition proceedings are not in accordance with the provisions of the Bankruptcy Act, if they are irregular, the court cannot confirm. Loveland, Bankr. 1257, 1278; Black, Bankr. § 654, p. 1354. Were the validity of the composition not attacked, the court might of its own motion inquire into its regularity. Loveland, Bankr. 1267. In Clarke v. Rogers, 228 U. S. 534, 548, 33 Sup. Ct. 587, 57 L. Ed. 953, it is said: "Equality between creditors is necessarily the ultimate aim of the bankrupt law." See, also, Zavelo v. Reeves, 227 U. S. 625, 628, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664; New River Coal Land Co. v. Ruffner Bros., 165 Fed. 881, 886, 91 C. C. A. 559.

[3] A composition must appear to be for the best interest of all creditors, and not merely for the best interest of certain ones or of a certain class. Black, Bankr. § 654, p. 1351. The provisions of the statute relating to compositions are in derogation of the common law in that they compel dissenting creditors to accept the percentage agreed upon by the majority in number and amount and deprive the minority creditors of their remedies on the balance of their respective claims. Such provisions are therefore strictly construed. Loveland, Bankr. 1257; Collier, Bankr. 288.

[4] The confirmation of a composition operates as a discharge of the bankrupt; but the theory of the law is that the discharge destroys the remedy but not the indebtedness. Zavelo v. Reeves, 227 U. S. 629, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664.

[5] A composition is none the less payable in money because the payment is postponed to a future day. In re McNab & H. Mfg. Co., Fed. Cas. No. 8,906. Loveland, in his work (page 1264), says:

"The statute does not declare of what the consideration must consist. Manifestly it should be of such a nature that it can be readily distributed by the judge. The most convenient form of consideration is money. But an honest debtor has no money. He has paid in all his money as well as his other property as a part of his estate. If he is required to deposit a money consideration in all cases, few compositions could be effected. In such cases he is usually dependent upon his friends. A practical consideration consists in promises to pay money at specified dates, secured by notes, reorganization bonds, or other negotiable paper, or possibly stock in a new company. Creditors who have confidence in their debtor may be willing, and may consider it for their own best interests, to accept a paper consideration and permit the bankrupt to continue his business. That negotiable paper may be used is implied by section 14c of the act, which provides that 'the confirmation shall discharge the bankrupt from his debts other than those agreed to be paid by the confirmation of the composition.'"

A like rule prevailed under the act of 1867, as appears from the following found in Blumenstiel, Bankr. (1897) 421, 422:

"The composition must provide for a payment or satisfaction in *money*, as distinguished from merchandise, notes, or other property; but the money thus to be paid may, by the terms of the resolution or offer, be made payable in installments due at stated periods, may be evidenced by promissory notes,

and also be secured by a surety, indorser, or by a bond satisfactory to a committee or otherwise. In re Lewis, 14 N. B. R. 144 [Fed. Cas. No. 8,314]; In re Reiman & Friedlander, 13 N. B. R. 128 [Fed. Cas. No. 11,675]; In re Hurst, N. B. R. 455 [Fed. Cas. No. 6,925]. The payment must be in money eventually, and though notes be given, there will be no satisfaction until they are paid. In case of nonpayment, the original debt revives."

The time within which deferred payments shall be made is for the determination of the creditors, and their action in that behalf will not be reversed, unless valid reasons for so doing be shown. In re Wilson, Fed. Cas. No. 17,785; Black, Bankr. § 648, p. 1341. The following from Loveland, Bankr. p. 1291, is a correct statement of the law:

"Where the consideration consists of negotiable paper, and the bankrupt does not fulfill his obligations and agreements in connection therewith, the creditor may recover his whole debt from the bankrupt. The confirmation of a composition does not release the bankrupt from debts agreed to be paid by the terms of the composition. If the bankrupt fails to make good his part, the consideration fails, and the whole debt revives."

The same rule must apply, if the consideration is a mortgage, and, if the mortgage should not be paid at maturity, the whole debt of each creditor will revive. Loveland, Bankr. 1289. A court will not restrain a creditor from recovering his entire original debt, if the debtor has failed to carry out the provisions of the composition. Ransom v. Geer (C. C.) 12 Fed. 607, 608, 609; In re Negley (D. C.) 20 Fed. 499, 500.

[6] The proposed third mortgage of $25,000 (or for $27,000, if not paid in three years) is for the benefit of and to secure all common creditors of the Company, including the two Springfield banks. There is no agreement that the banks shall look to Kahn and Mrs. Kinnane only for the payment of their respective claims in excess of 45 per cent. On the contrary, if Kahn's connection with the business is severed, he is to be released from the notes which he and Mrs. Kinnane are to give to the banks. His letters betray a desire to withdraw from the business. If this should occur, his stock in the Company will still remain liable for the notes. It is usual, when a composition is made, for each creditor separately to receive his portion, that he may thereafter manage and dispose of his property as he pleases. In the instant case, it is not proposed to issue to the respective creditors any note, or certificate of indebtedness, or other instrument of either a negotiable or nonnegotiable character, to evidence the sums due them, respectively, which are secured by the mortgage. The precise interest which any creditor will have in the mortgage cannot be determined, until it becomes known whether all of those who have filed claims and all of those who have been scheduled, but have not yet filed their claims, accept the composition, nor can it then be determined, unless a computation be made by some one conversant with all the facts regarding acceptances. It is surmised that this fact is not necessarily a fatal defect in the company's offer; but allusion is made to it as one of the inconveniences and uncertainties of the offer. A creditor will not be able to avail himself of his security by indorsement or delivery, as might be done, were he to re-

ceive a note or certificate of indebtedness showing the sum due him, although he could, I think, make a valid assignment of his interest in the mortgage. His ability to make an assignment, however, would be hampered by the fact that, if a default should occur, the mortgage could not be foreclosed unless a majority of the creditors as to number and amount should so direct.

The proposed plan does not segregate the rights of creditors, but compels them to negotiate with each other and determine at some future time on the policy to be pursued in enforcing their rights, should such become necessary. The nonassenting creditors will be compelled to enforce their rights through a person and at a time not of their own selection and to contribute towards payment for such person's services. Under the statute, the legally provided majority of creditors may direct what portion of their claims the minority shall receive; but I know of no rule which permits such majority to exercise control over the property of the minority, or of any member of it, after the composition has been effected. The majority control terminates with the composition proceedings. The control given by the act cannot be so projected into the future as to regulate the business conduct and property of another and restrain him from freely acting as regards his own. We have seen that, if a default should occur in the payment of the mortgage, the sum remaining due on each creditor's original claim revives. He may then lawfully proceed in his own way and without restraint to collect. Other creditors, for want of authority, may not say that he shall not do so. The proposed composition, therefore, exceeds the limits imposed by law.

There is a sense of fairness in the proposition that the two banks should have a preference in case of foreclosure as to their 40 per cent. dividend of about $16,000, and the $30,000 advancement, because, by waiving the immediate payment of the one and by the advancement of the other, they enable the other creditors to obtain their cash dividend and the company to continue its business and meet the payment of the 5 per cent. evidenced by notes. But may they acquire a preference over dissenting creditors to the company's personal assets in addition to that expressly given by their mortgage as to the real estate? If a default should occur in the third mortgage, the dissenting creditors in that case may in law, in the absence of an agreement on their part to the contrary, look to any and all of the Company's property for payment of the sums originally due them in so far as unpaid. The composition agreement, however, expressly denies them recourse to any of the Company's personal assets, and seeks to limit them to the real estate only; and this is so, even if the personal assets should be more than enough to satisfy the banks' mortgage and the real estate be insufficient to pay the third mortgage. There might thus be a substantial sum remaining in the possession of the Company, which none of the present unsecured dissenting creditors could reach, notwithstanding the partial payment only (through the third mortgage) of their revived claims. If, notwithstanding the revivor of the banks' original claims in case of the

Company's default, the banks may enforce their notes signed by Kahn and Mrs. Kinnane, as I think they may, they could, on account of their holding as collateral practically all of the stock issued by the Company, avail themselves of such surplus, if any, and could also, in case a portion of their original claims remained unpaid, share with the common creditors in the distribution of the sum realized on the third mortgage.

As reflecting on the situation it may be noted that Kahn still owes the $10,000 which he borrowed when he entered the Company, and that Mrs. Kinnane appears to be deeply involved by the Company's misfortunes. If, however, the personal assets should pay in full the banks' mortgage and also their notes signed by Kahn and Mrs. Kinnane, and there should still remain a surplus of such assets, no portion of such assets could be reached by the common creditors. As the real property is not in the business center of the city, and as purchasers of expensive property are not numerous, unless it be in the great cities, it is probable that the sum realized on the sale at public auction would be less, and it might be considerably less, than its appraised value, and that, even if the banks' mortgage, the mechanics' liens, and taxes should be fully paid, the trustee might realize much less than either of the sums named in the mortgage. The proposed plan, nevertheless, would say to each of the common creditors that he might not proceed against any surplus of personal assets to recover any unpaid portion of his revived debt. If a default should occur at an early date before the mechanics' liens are satisfied, the third mortgage would probably pay little to the common creditors, even if the personal assets should satisfy the banks' mortgage. The majority of the creditors are without power to bind the minority to look to the real estate only, or to deprive such minority from recourse on the Company's personal assets for the satisfaction of their claims, should the Company breach its proposed agreement. It is said in Loveland, Bankr. 1269:

"The law which enables a majority of the creditors to accept a composition with their debtor, to which other creditors do not consent, and so to bind such dissentients, assumes as an essential condition that it shall in all respects be just."

The proposed composition is not just, in that it does not maintain the equality which the Bankruptcy Act contemplates. If a default should occur, the banks, under the ordinary rule, would be required to exhaust their mortgage security first. If an unpaid residue should remain, they would then be entitled to pro rate with the unsecured creditors. Under the proposed plan, the banks may first resort to and exhaust, if need be, the personal assets to the exclusion of such creditors, and might thereafter, if their mortgage be not fully satisfied out of such assets, in preference to the common creditors, pursue their prior lien on the real estate to its total or partial exhaustion, as the case may be, to the detriment of the common creditors.

It may be said that in the foregoing undue prominence is given to the possibility of the Company's future failure, and not enough to the possibilities of future success. All aspects of the situation, how-

221 F.—49

ever, must be considered. The record discloses that the Company, under another name, about two years ago failed and made a composition, that an unhappy situation exists within the Company itself, that its store is aside from the principal business center—not far from it, it is true, but still far enough to have lost some of the store's former trade and prestige—and that the Company will resume business, if the composition is confirmed, with a heavy fixed debt. The contingency of future failure is not to be ignored.

[7] It is urged that the plan proposed—especially its mortgage feature—was due to the insistence of one of counsel of the objecting creditors, and that he at one time assented to such plan. That occurred at the time of the prior offer. It is conceded that his approval was conditional, and was withdrawn. The present offer may be substantially the same as the former; but it is nevertheless a new offer, accepted or refused, as the case may be, in the light of facts, not all of which were previously known by the creditors. Each creditor was at liberty to exercise an independent judgment as to the present offer, whatever may have been his attitude as regards the former.

It is not necessary to rule on any of the many other questions presented. For reasons above stated, the composition cannot be confirmed, and an order may be taken accordingly. Another attempt at composition should not be entertained.