## The Hooven Mercantile Company *v.* The Evans Mining Company. Appeal of Thomas C. McCahan and John W. Cooper, trading as McCahan & Cooper.

*Corporations—Receivers—Distribution—Collateral attack upon charter.*

On the distribution of a fund raised by a receiver's sale of the assets of an insolvent corporation, a creditor has no standing to object to the validity of the organization of the company, or that the ten per cent in cash was not paid in, or that the certificate of organization failed to state that the stock of the company was issued for property taken.

*Corporations—Rights of stockholders who are creditors—Insolvency.*

In the distribution of the assets of an insolvent corporation where there is no evidence impeaching the full consideration of notes given by the company to stockholders who advanced money to it, such stockholders are entitled to share with other creditors in the fund.

*Corporations—Insolvency—Statute of limitations—Stockholders as creditors.*

Notes given by a corporation to stockholders for moneys advanced and which have been constantly recognized as subsisting obligations by the company, and treated as such, are not barred by the statute of limitations.

*Corporations—Forfeiture of charter—Company's store.*

The keeping of a company's store does not entail a forfeiture of a charter of a corporation or of the rights of any creditor or stockholder of the company.

Argued March 9, 1899. Appeal, No. 104, Jan. T., 1899, by McCahan & Cooper, from order of C. P. Carbon Co., Oct. T., 1885, No. 1, overruling exceptions to master's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for a receiver.

Exceptions to master's report. Before CRAIG, P. J.

Thomas C. McCahan and John W. Cooper, trading as McCahan & Cooper, the appellants, are creditors for goods sold and delivered to the defendant, which has a capital stock of $150,000 subscribed for in cash, of which, according to their sworn statement, ten per cent, or $15,000, was paid in cash. Appellants contended before the master that they should be paid in full, before the officers, directors and stockholders, or

at least that the latter should only be credited on account of their unpaid stock for their claims on notes given them by the company for cash advanced, which should have been applied on account of their unpaid subscriptions.

They further alleged that neither the ten per cent required of every corporation was paid in cash, nor was any of the capital, which was subscribed for in full, paid in cash.

Under these circumstances they contended that the sworn application for their charter having stated that subscriptions were made in cash, the same cannot be satisfied by a meeting of the stockholders declaring that the whole of the capital stock shall be issued as full paid to three of the incorporators, in consideration of the assignment of a lease by a New Jersey corporation in which these incorporators were interested and the claimants on the notes, who are all stockholders, have no equity to come in pari passu with the bona fide creditors, who gave credit to the false statements contained in the charter.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the master's report.

*William M. Stewart, Jr.,* and *John G. Johnson,* with them *Laird H. Barber, Freyman, Heydt & Northstein* and *John Sparhawk, Jr.,* for appellants.—If stock is to be issued as full paid for property, there is an easy and proper method prescribed by the act of April 29, 1874, but it must appear in the application for charter that it was, or is, to be so issued, and "such stock shall not be stated or certified as having been issued for cash." The object of this statutory requirement is, obviously, for the protection of parties dealing with the company: Lexow v. Penna. Diamond Drill Co., 5 Pa. Dist. Rep. 500.

The statements concerning capital stock paid in and subscribed for, contained in the application for charter, are conclusive upon the corporation and its members as between either and third parties, and no arrangement undisclosed by them can be permitted to control their effect as against the latter: Allibone v. Hager, 46 Pa. 48; Lexow v. Penna. Diamond Drill Co., 5 Pa. Dist. Rep. 501.

The court acts upon equitable principles in the distribution

of the assets of an insolvent corporation, Hart's Appeal, 96 Pa. 355, and sees that substantial justice is done, rather than looks to the mere forms by which the result is to be reached: Hopkins's & Johnson's App., 90 Pa. 69.

The whole trend of the decisions is that stockholders do not stand upon the same equitable plane as general creditors: Humboldt Safe Deposit & Trust Co.'s Assigned Estate, 3 Pa. C. C. 621; Schlaudecker's App., 22 W. N. C. 37; Hogg's App., 88 Pa. 195; Hart's App., 96 Pa. 355; Rice's App., 79 Pa. 168; Patterson v. Franklin, 176 Pa. 612; Yeager v. Scranton Trust Co. & Savings Bank, 14 W. N. C. 296.

*Edward J. Fox,* for appellee.—The findings of fact having been confirmed by the decree of the learned court below are to be treated as if established by a verdict of the jury, and not to be disregarded except for plain mistake: Doran v. McConlogue, 150 Pa. 98; Warner v. Hare, 154 Pa. 548; Brotherton Bros. v. Reynolds, 164 Pa. 134.

It has uniformly been held by the department of state as well as by the attorney general's department, that the whole of the ten per centum may be paid by one stockholder: 1 Weimer's Pennsylvania Corporation Law, p. 68.

Unless the appellants could show special injury to themselves they could not complain, even if it be conceded that a fraud was practised. The state could complain, and upon a showing of fraud could cancel the letters patent: Patterson v. Franklin, 176 Pa. 612.

Where after a subscription to the capital stock of a corporation no call or demand for money so subscribed has been made for the term of six years, the statute of limitations is a bar to an action on the subscription: Shackamaxon Bank v. Dougherty, 20 W. N. C. 297; Pittsburg R. R. v. Biers, 52 Pa. 22; McCully v. Pitts. & Connellsville R. R. Co., 32 Pa. 25; Phila. & Del. County R. R. Co. v. Conway, 177 Pa. 364.

The Evans Mining Company has always acknowledged its indebtedness upon these notes and claims, up to the appointment of the receiver, and still acknowledges its liability thereupon.

The notes in question were renewable at the option of the company, and did not become payable until the appointment of the receiver.

The commencement of this action by the plaintiff as a creditor of the Evans Mining Company on behalf of itself, and all other creditors, tolls the running of the statute.

The appointment of the receiver to wind up the company tolls the running of the statute.

The statutes of Pennsylvania provide that the appointment of a receiver shall act to prevent the running of the statute of limitations: Act of April 25, 1850, sec. 7; Act of March 27, 1713.

OPINION BY MR. JUSTICE GREEN, October 6, 1899:

The bill in this case was filed by a creditor of the corporation defendant, alleging the insolvency of the company and asking the court to take charge of the property and assets of the defendant and to appoint a receiver for that purpose. It was not a creditor's bill filed against the corporation and its stockholders for the purpose of enforcing the payment of unpaid capital stock for the benefit of all the creditors, by means of an assessment to be made by the court upon the stockholders of the company defendant of an amount of unpaid capital stock sufficient to pay all the debts of the corporation. The bill has no aspect of that character. It does not ask for such a decree, it does not set forth the facts which are necessary to enable the court to make such a decree. Nor is it a bill against the stockholders claiming to hold them liable as partners by reason of defects in the organization of the defendant company as a corporation. On the contrary, it is a bill against the corporation in its corporate capacity, asking the court to administer its property and assets in such a manner as to have them applied to the payment of its debts. It necessarily implies, and proceeds upon the assumption, that the defendant is a corporation, lawfully created, having property of various kinds, engaged in the prosecution of a lawful business with its assets of whatever kind, and with the intent and purpose to have those assets administered as the property of the corporation, and to have them converted into money, and the money resulting from the business carried on and from the property sold, to be applied to the payment of its debts, so far as that result can be accomplished. The bill further prays that the assets of the corporation defendant after being applied to the payment of its debts, should be converted

into money and distributed among the stockholders of the corporation "according to their respective interests." There is no averment anywhere in the bill of any illegal act or acts done by the defendant company or its stockholders, either in the process of its organization or in the conduct of its business and affairs. On the contrary, its lawful organization is alleged in the first clause of the bill, and its lawful acquisition of its most valuable assets, to wit: the 'lease of the coal mine from the owners of the property, in the third and fourth clauses. In the eighth clause it avers that the lease is in danger of being forfeited for nonpayment of royalty, and that the creditors may thereby be deprived of the means of satisfying their debts, and in the ninth clause it is averred "that it is essential for the preservation and rights of the defendant company, as well as for the protection of the creditors of said company, that the court should take into its custody and control the property and assets of the said The Evans Mining Company, so that the same may be disposed of at the greatest advantage, and so the creditors may realize therefrom the full value thereof." The tenth clause, averring "that it is essential for the preservation of the property of the said The Evans Mining Company that the mine and mining property should be properly cared for during such interval as may elapse before the said property or the leasehold thereof can be sold," concludes with the prayers for relief, of which the second is that a suitable person may be appointed as receiver, and that "all the estates, choses in action, property and effects, real and personal, and all of the books of accounts, papers, vouchers and evidences of title, stock in trade and property of every kind . . . . shall be delivered into the control and hands of said receiver." It will thus be seen that the whole proceeding recognized and contemplated the legal, valid existence of the defendant corporation, and that all of its property, effects and assets of every kind should be taken in charge and custody of the court by means of a receiver, and that all its affairs should be administered distinctively as the property of the defendant, for the benefit of its creditors. In point of fact, the bill was entertained by the court, and a receiver was duly appointed who did take possession of all its property and effects, and did carry on its business from the time of his appointment, August 3, 1895, until he sold the lease and other property of the

defendant company, under an order of the court, on April 3, 1897. During this time he received in cash as the proceeds of the business carried on and property sold the sum of $151,783.63, and paid out in expenditures in and about the business of the company $140,680.98. Later he filed an account as receiver, exhibiting as a balance in his hands after all expenses and costs had been paid of $8,709.65 for distribution among the creditors of the company. And now the only question at issue is the distribution of these assets, distinctively and absolutely as the property and assets of the defendant company, among its creditors. No question as to the validity of its existence as a corporation is or can be raised in such a contest. All the parties necessarily claim as creditors of the company and are equally interested in maintaining the integrity of the fund for distribution as the property of the company. It is of no kind of consequence, therefore, whether the requirements of the law respecting the details of the organization proceedings were strictly observed or not. Whether they were or not is entirely immaterial in view of the character and object of the proceeding. But even if the objections to the validity of the organization were sustained, these parties have no standing to raise the question of the validity of the organization. We have many times decided that such questions can only be raised by proceedings at the instance of the attorney general in the nature of a quo warranto to forfeit the charter. The doctrine is so familiar that a citation of the authorities is not necessary. The whole subject, involving the very question raised here as to whether the ten per cent of the capital to be paid in cash at the time of organization was ever paid, has been so recently reviewed by this Court in an opinion delivered by our late Brother WILLIAMS, that a brief citation from it will suffice. It is the case of Patterson v. Franklin, 176 Pa. 612, in which we held that an assignee for the benefit of creditors has no standing to maintain an action against the incorporators because they falsely swore in the certificate filed for the charter that ten per cent of the capital had been actually paid to the treasurer. This was an independent action brought directly against the individual incorporators who, it was alleged, perpetrated the fraud, yet we held there could be no recovery. The action was assumpsit, brought by the assignee of an insolvent corporation against

VOL. CXCIII—3

the delinquent stockholders, to recover money alleged to be due on their stock subscription because they had made the false oath as to the payment of the ten per cent to the treasurer. In the course of the opinion our Brother WILLIAMS said: " The plaintiff in this action is the assignee. The defendants are the corporators by whom the alleged false certificate was signed. The right to recover is rested on the alleged fraud committed by means of the false representation contained in the certificate. Now the assignee succeeds to all the rights of action which his assignor had at the time of the assignment, whether matured or not. He can sue, therefore, for unpaid subscriptions to the capital stock, and for any debt due by a stockholder, as well as for debts due the corporation from others. He recovers, because the corporation could recover, and all such demands are assets of the corporation in his hands. It is important, therefore, to inquire what cause of complaint the corporation has against the defendants because of the alleged fraud. How did the corporation suffer because of it? If the certificate was a falsehood in the particular alleged, the executive department was cheated into issuing letters patent to persons not entitled to them. The state could complain ; and upon showing the fraud cancel the letters patent. The business public could complain ; and any person induced to credit the corporation because of the falsehood, and finding himself a loser, might proceed for the recovery of his individual loss in an appropriate form of action. But how can the corporation complain? The fraud was perpetrated for its benefit. It was a gainer, not a loser by it. . . . Those who suffered are the parties to complain, not those who benefited by means of the fraud. The corporation had no right of action against the defendants growing out of the false statement in the certificate, and the plaintiff, its assignee, has none. It is suggested that if the assignee cannot recover in the right of the assignor he may do so in the right of creditors. But the creditors have no joint action against the defendants. If a right of action exists, it is several of those injured, and extends no farther than the individual loss of the particular creditor who sues. The question of the defendants' liability to those who were led to trust the corporation because of the false certificate is not before us. What we say is that if they have a right of action it is not an asset the proceeds of which are for

general distribution.   The action is misconceived, and there can
be no recovery in this case, though the fraud was admitted on
the record in the terms in which it is charged.   The right to
complain is in individuals who suffer, and the right of action
extends only to the individual loss of the particular person in-
jured, if a right of action exists."   All of these comments are
applicable in the consideration of the appellant's contention.
He is a creditor of the company.   The fund in controversy is
the property of the company.   He has a right to a proportion-
ate share of the fund because he is a creditor of the company,
and the title of the company to the fund is the only means by
which he can get access to the fund.   It cannot possibly serve
his interest in any manner to impeach the title of the company
to the fund on account of irregularities or frauds in the organ-
ization proceedings, and hence those matters are of no conse-
quence in the present inquiry, and the referee properly rejected
them from his consideration.   If it is urged that he has a per-
sonal and individual remedy because of loss suffered by him by
means of the fraud, he must pursue an appropriate remedy,
which this is not.   This record raises no such questions, and has
no proper parties to that end.   If the effort to recover for this
same alleged injury could not succeed in the last case cited,
much less can it succeed here, where there is nothing at issue
but the distribution of a fund, the property of the defendant
company, among its creditors.

On the merits the referee has found the facts against the
plaintiff's claim, and that finding has been affirmed by the
learned court below.   If we look into the testimony to deter-
mine the correctness of the finding we discover no testimony
sufficient to demonstrate the error of the finding.   The defend-
ant company was organized upon the basis of property trans-
ferred to the company.   The certificate did not say so, indeed
could not say so, because the transfer of the property was not
made, and apparently could not be made, until after the organ-
ization was completed.   But it was made immediately after
the organization was effected, and beyond all question, under
the testimony, the property transferred was of the full value
of the whole of the capital stock.   It consisted of a valuable
lease and of all the property, machinery, fixtures, including
the breaker, without which the business of the company could

not be conducted. The very heavy cost of such machinery and fixtures is well known in the coal regions. The Act of April 17, 1876, P. L. 30, sec. 4, expressly authorized corporations to "take such real and personal estate, mineral rights, patent rights, and other property as is necessary for the purposes of its organization and business, and issue stock to the amount of the value thereof, in payment thereof." There is no testimony impugning the value of the property which was transferred to the company in consideration of the stock issued. If even there was a culpable omission to state the fact in the certificate of organization that the stock was issued for property taken, such omission is of no possible consequence in the present proceeding, as has been already shown.

There was no evidence impeaching the full consideration of the notes given by the company to the stockholders who advanced money to the defendant, and therefore their rights as creditors were not forfeited.

The contention that the directors or stockholders who held notes of the company for money loaned to the company could not share in the distribution with other outside creditors is without force. In Ashhurst's Appeal, 60 Pa. 290, we said, adopting the opinion of STRONG, J., at nisi prius : "There must be many things which directors can do for their individual benefit, which are binding upon a corporation of which they are directors. If they have advanced money I cannot doubt that they may pay themselves with corporation funds. If they have become liable as sureties for the corporation they may provide for their indemnity. And though ordinarily the law frowns upon contracts made by them in their representative character with themselves as private persons, such contracts are not necessarily void. They are carefully watched and their fairness must be shown." See also Watts's Appeal, 78 Pa. 370. The authorities to the same effect are very numerous but further citation is unnecessary, as there is no doubt about the law on this subject.

That these claims were not barred by the statute of limitations is too plain for argument. They were constantly recognized as subsisting obligations, and the referee has found that they were continually treated as such by the defendant company. The keeping of a company store, of course, does not entail a

forfeiture of the charter or of the rights of any creditor, stockholder or otherwise. On the whole case we discover no error in the record, and the assignments of error are all dismissed.

Decree affirmed and appeal dismissed at the cost of the appellant.