## Green et al., Appellants, *v.* Philadelphia Inquirer Company, et al.

Argued December 9, 1937.   Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John J. McDevitt, Jr.,* with him *Joseph M. Leib* and *Francis Shunk Brown,* for appellants.

*Benjamin O. Frick,* for appellees.

*Robert T. McCracken,* with him *Charles R. Hindley* and *Ulric J. Mengert,* for appellee.

OPINION BY MR. JUSTICE DREW, January 3, 1938:

James Elverson, Sr., died in 1911, owning all the outstanding capital stock of The Philadelphia Inquirer Company, a Pennsylvania corporation, and publisher of *The Philadelphia Inquirer* newspaper. By the terms of his will these shares formed a part of the residuary estate which was bequeathed to his widow for life. Upon her death the shares were given to his son James Elverson, Jr., in trust "to pay unto himself one-half and unto [testator's] daughter Eleanor Louise Patenotre . . . the other one-half of the dividends earned thereon which shall be computed and declared upon the basis of the net earnings." The trustee was given "full power . . . to manage and control" the corporation. The will provided that the trust should end upon the death of the trustee, that, if he should die without issue, the "whole of the shares" should go to testator's daughter.

The widow died in 1923, leaving a will giving all of her estate, after a few pecuniary legacies, to her son and daughter in equal shares. James Elverson, Jr., died in 1929, without issue, leaving the residue of his estate to his wife. The latter died within three months thereafter leaving her residuary estate to John Green, her brother-in-law.

Shortly after the death of James Elverson, Jr., the stock of The Philadelphia Inquirer Company, a Pennsylvania corporation, was issued to his sister. Heretofore this corporation had owned all the real estate, machinery and other equipment used in publishing the newspaper. She now proposed a plan whereby the ownership of the real estate should remain in the Pennsylvania corporation, but that the newspaper, together with all machinery and equipment should be transferred

to a new corporation of the same name, organized under the laws of Delaware, the new company to be the future publisher of the newspaper. The Delaware corporation was formed and the ownership of the newspaper, machinery and equipment was transferred by the Pennsylvania corporation, the latter receiving in return 109,000 shares of preferred stock of the new corporation and 191,000 shares of common stock, being all the stock then or ever issued by the Delaware corporation. These shares of the Delaware corporation stock, upon receipt by the Pennsylvania corporation, were declared as a dividend, and transferred to Mrs. Patenotre as the sole stockholder.

Later in the same year, 1929, Mrs. Patenotre sold 109,000 shares of the preferred stock of the Delaware corporation and 40,000 shares of the common stock, to a firm of bankers. No further history of these shares appears. In 1930 Mrs. Patenotre gave her son Raymond all of the shares of the Pennsylvania corporation, together with 151,000 shares of the common stock of the Delaware corporation. A few days thereafter he sold both blocks of stock to the Curtis-Martin Newspapers, Inc., now the Public Ledger, Inc., payment being made in cash and notes. The entire capital stock of the Pennsylvania corporation is now owned by the Delaware corporation. In conjunction with the foregoing transactions, Mrs. Patenotre and her son formed the Elverson Corporation, a Delaware corporation, and became the owners of all of its capital stock. The notes given by the Curtis-Martin Newspapers, Inc., were transferred to the Elverson Corporation. In 1934, Public Ledger, Inc., as successor to the original maker of the notes, defaulted, and transferred 136,000 shares of the common stock of the Delaware corporation to the Elverson Corporation, retaining 15,000 such shares. In 1936, M. L. Annenberg acquired from Mrs. Patenotre and her son all of the capital stock of the Elverson Corporation.

To summarize, the Delaware corporation now owns all of the stock of the Pennsylvania corporation. M. L. Annenberg owns all of the capital stock of the Elverson Corporation. The Elverson Corporation owns 136,000 shares of the common stock of the Delaware corporation. Public Ledger, Inc., owns 15,000 such shares. The remaining 40,000 shares of common stock of the Delaware corporation together with the entire issue of 109,000 shares of preferred, disposed of by Mrs. Patenotre to a banking firm, are not presently accounted for.

The present bill in equity is brought by the administrators of the estate of James Elverson, Jr.; named as defendants are the two Inquirer Companies, Elverson Corporation, Public Ledger, Inc., Mrs. Patenotre, her son, and M. L. Annenberg.

During the years from the death of James Elverson, Sr., in 1911, until the death of his son and the termination of the trust in 1929, only a very small portion of the net earnings of the corporation were distributed in the form of dividends. It is plaintiffs' contention that the widow of James Elverson, Sr., was, during her life estate, entitled to all of the net earnings of the company, that these earnings were far in excess of the dividends declared, that the undistributed earnings passed under her will to her son and daughter, that her son's share passed under his will to his wife, and under her will to her brother-in-law, John Green, who is now entitled thereto. By a similar process they contend that John Green is also entitled to the undistributed earnings that James Elverson, Jr., might have received. The bill seeks an accounting, and a declaration that the respective transferees, because they were cognizant of the situation, be declared trustees of their different shares in an amount represented by the undistributed earnings.

The Philadelphia Inquirer Companies, the Public Ledger, Inc., and M. L. Annenberg filed preliminary objections, which were sustained, and as to them the bill was dismissed. These appeals followed.

174

We think the bill fundamentally defective. Plaintiffs' contention that the will of James Elverson, Sr., gave his widow the net earnings of the corporation is untenable. She was merely the life tenant of all of the corporation's capital stock. As such she was entitled to all dividends that might be declared. No specific instructions accompanied the gift to her of the life interest. Her remedy, in case she was dissatisfied with the corporation's dividend policy, which she was not, would have been the remedy of any other stockholder, a suit against the company and its directors. To be successful in such a suit an abuse of discretion on the part of the directors would have to be shown: *McLean v. Pittsburgh Plate Glass Co.*, 159 Pa. 112; *Corgan v. Lee Coal Co.*, 218 Pa. 386; *Hlawati v. Maeder-Hlawati Co.*, 289 Pa. 233; *Gibbons v. Mahon*, 136 U. S. 549. The present bill contains no averment of dissatisfaction on the widow's part with the corporate dividend policy. It is not alleged that she demanded a change or an increase; nor is there any averment that the management's conservative policy was arbitrary or that the directors had abused their discretion. The right of the present plaintiffs to complain, if any they have, is purely derivative, and certainly can rise no higher than the right that the life tenant had during her lifetime.

Nor is the situation altered with respect to the undistributed earnings following the death of the testator's widow and during the continuance of the trust. Plaintiffs argue that the direction to his son, the trustee, "to pay . . . the dividends earned thereon which shall be computed and declared upon the basis of the net earnings," is a command to declare all net earnings in dividends. Plaintiffs' argument overlooks the immediately following significant grant to the son of "full power . . . to manage and control" the corporation. It is apparent from a reading of the will that it was testator's intention that his son be vested with all the power

over the corporation that he could give him. The direction with respect to dividends was merely a limitation upon the dividends payable—that they should be "upon the basis" of net earnings. Here again the interested parties, the testator's son and daughter, never expressed any dissatisfaction with the dividend policy, and never claimed that they were entitled to net earnings.

The will of James Elverson, Sr., did not direct that all of the net earnings should be paid out in dividends, nor was there any such intention on his part. Furthermore, it is clear that James Elverson, Sr., had no power, even had he so intended, to dictate by will the dividend policy of the corporation of which he was the sole stockholder. The directors were under no duty to declare all of the corporation's net earnings in dividends. Stockholders are not entitled to the earnings as such of a corporation. A corporation is an entity separate and distinct from its stockholders and a dividend declaration is necessary to create in the stockholder any ownership or other property right in the earnings. Where the owner of corporate stock dies leaving a will whereunder the stock is given to one person for life, with remainder to another person or persons, he does not thereby create any larger property rights as a stockholder in any of his beneficiaries than he himself had. The rule is not different when the corporation is controlled by one person. In *Goetz's Estate (No. 1)*, 236 Pa. 630, the testator left the income of his estate to his widow for life. He had been a partner in a tanning business. The other partner was bought out and a corporation was organized in which the estate owned all the stock. The court below proceeded to ascertain the profits of the corporation and award them to the widow. This court reversed, saying, at page 634: "The estate, as a holder of all the stock, would not be the owner of the corporation, but only of the shares of its capital stock, which constitute a species of property entirely distinct from the corpo-

rate property. . . . The owner of all the stock of a corporation does not own the corporate property or become entitled to manage or control it." That the owner of all or the majority of the shares of a corporation cannot, without more, dictate the policy of a corporation, is firmly established: *Monongahela Bridge Co. v. P. & B. Traction Co.,* 196 Pa. 25; *Long v. Rike,* 50 F. (2d) 124, cert. denied, 284 U. S. 657.

While James Elverson, Sr., did not have any right to control the assets or dividend policy of the company he did have full ownership of its capital stock. In view of this fact plaintiffs contend that equity should now apportion the undistributed earnings. Our cases involving apportionment have never been carried to such an extreme. Here the practical difficulties, which must be given consideration (see *Nirdlinger's Estate (No. 1),* 327 Pa. 160, 170), are as fatal as they are obvious. A more conclusive answer is that the shares have all become vested in the remainderman. "When the shares released of the trust pass to the remaindermen the trust estate is ended, and the stock is freed from any claim by the life tenants": *Neafie's Estate,* 325 Pa. 561, 571. "The question cannot arise where such dividend is declared after the termination of the trust; the rights of a deceased life tenant end on the termination of the trust": *Nirdlinger's Estate (No. 1),* supra, 170; see Restatement, Trusts, section 236(e), comment.

In our treatment we have passed over formal defects that might be cured by amendment. We have assumed that the bill is not barred by laches. The bill is basically defective and was properly dismissed.

The decree is affirmed at the cost of the appellants.