Gordon, Secretary of Banking, *v.* Hartford Sterling Company (et al., Appellants.)

278

Argued May 25, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

petition to modify order refused September 25, 1944.

*Joseph Sharfsin,* with him *Abraham Wernick,* in propria persona, for Abraham Wernick, appellant, No. 45.

*Charles S. Shotz,* with him *Marcus Berman,* for creditor, appellant No. 41, appellee No. 45.

*Victor J. Di Nubile,* for president of corporation, appellant No. 44, appellee No. 41.

*Albert J. Williams,* with him *William R. Toal,* for creditor, appellee No. 45.

*Abraham Wernick,* with him *Frank A. Moorshead,* for receiver, appellee No. 41.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 30, 1944:

Three appeals have been taken from the decree of the court below with respect to allowances of claims of creditors and the confirmation of a receiver's account, in the matter of the accounting and distribution of the assets of an insolvent domestic corporation.

This case has been in litigation for over ten years. It has now been before this Court three times. It has been before the United States District Court, the United States Circuit Court of Appeals, and twice certiorari to the United States Supreme Court has been denied.

In order to appreciate the various questions raised by these appeals the narration of the principal facts is required. The Hartford Sterling Company, a Pennsylvania corporation (whose assets are being distributed), was organized in October of 1930. Of the authorized capital stock of 250 shares, only 150 shares were issued.

Of these, Harry I. Avrach, the company president, owned 119. On March 4 and March 8, 1931, two fires occurred, destroying the plant of the corporation and its contents. The loss was covered by two insurance policies, aggregating $113,500. The corporation claimed a fire loss of $73,000.

Insurance appraisers estimated the damage to the building at $12,498.00 and to the equipment at $14,734.00; a total of $27,232.00. Shortly after the fires, Clayton Lofland, a contractor (appellant in No. 41 herein), agreed in writing to repair the fire damage to the building and equipment for the exact amount of such appraisal or estimated loss. On July 21, 1931, Lofland obtained an assignment of the company's interest in the insurance policies to the extent of $27,232. In November, 1931, the company, authorized by its directors, delivered to Lofland a formal assignment of its claim against the insurance company in substitution of its previous assignment and as collateral security for all repair work done by Lofland up to $27,232.00.

Suspicious circumstances surrounding the fire caused Harry I. Avrach, the company president, and another to be indicted for arson and conspiracy and tried in the Court of Quarter Sessions of Delaware County. The first trial resulted in a mistrial. At the second trial, Avrach was convicted on a count charging him with conspiracy to cheat and defraud the insurance company. He appealed to the Superior Court, and his conviction was set aside and a new trial ordered (*Commonwealth v. Avrach*, 110 Pa. Superior Ct. 438, 168 A. 531). The indictment was subsequently nolle prossed.

Neither Avrach nor his corporation possessed funds necessary to defray the cost of the defense and the appeal in these criminal proceedings. Lofland, the assignee of the policies, at the request of Avrach and the secretary of the corporation, advanced all costs and fees. Lofland averred that Avrach and the company's secretary expressly agreed that these costs would be repaid to him from the sums realized from the insurance claims.

Efforts were made by the company and its creditors to effect a settlement with the insurance company. These efforts were unsuccessful because of the failure of the parties to agree as to the amount payable to Lofland out of the proceeds. In March, 1933, two suits were instituted by Lofland, assignee, and others in the District Court of the United States (transferred from the Common Pleas Court of Philadelphia County) against the Mechanics and Traders Insurance Company of New Orleans (the insurance company), to recover the amount of the loss sustained by the defendant corporation to its plant and machinery as a result of the fires.

On June 6, 1934, the Court of Common Pleas of Delaware County appointed Clarence H. Fox as receiver for the Hartford Sterling Company, which had meanwhile been decreed insolvent.

On July 27 of the same year the receiver petitioned the Court of Common Pleas for leave to compromise, for $36,000, the two suits pending in the District Court against the insurance company. Lofland and other creditors filed opposing answers. The court approved the compromise. On December 26, 1934, Lofland appealed to this Court from such order. The appeal was dismissed on May 27, 1935 (319 Pa. 174, 179 A. 234). The receiver compromised the two suits pending in the District Court against the insurance company, and the sum of $36,000 was paid into the Registry of the District Court.

The receiver petitioned the District Court to remove the $36,000 from the Registry of the District Court. Lofland opposed the removal, contending that he was the absolute owner of the fund by virtue of the assignments to him. The issue was referred to a special master. The master held twenty-two meetings. After study of the voluminous testimony, he awarded Lofland $7,627.83, *with interest,* for work performed under the contract to repair the building and rehabilitate the machinery and equipment. This sum was decreed to be payable to Lofland out of the insurance proceeds by virtue of his as-

signment, and the balance was awarded to the receiver of the Hartford Sterling Company. With respect to a claim for $6,203.35 alleged to have been advanced by Lofland for the defense of Avrach (the president of the insolvent corporation, who was indicted for arson), the master found that such sum was advanced after the assignment of the two policies and therefore could only be presented in the receivership proceedings in Delaware County. The master ruled that Lofland should not be charged with the costs of the receivership out of his share of the funds. Exceptions were filed by both Lofland and the receiver. The master's report was approved by the District Court (KIRKPATRICK, J.). On appeal to the Circuit Court of Appeals (98 F. 2d 589, opinion by MARIS, J.) the decree of the District Court was modified and affirmed. Interest was disallowed. The United States Supreme Court refused to allow a writ of certiorari (305 U. S. 658).

Upon receipt by the state receiver of the amount of the award of the federal court, the receiver filed his account in the court below.

Lofland, on May 31, 1940, secured a rule in the court below to show cause why the appointment of the receiver should not be vacated because irregularly made, and a second rule to vacate the receiver's account and proceedings thereafter. This proceeding was over six years after the appointment of the receiver had been made, and two years after the date of the opinion of the Circuit Court of Appeals. After hearing, both rules were discharged. An appeal was taken by Lofland to this Court. We affirmed the decree of the court below in a per curiam opinion (341 Pa. 401, 22 A. 224). We said: "It is plainly appellant's purpose in the present proceedings to relitigate questions which were necessarily involved in prior litigation in this Court and in the Federal Courts and which have already been finally and conclusively determined against him. See *Gordon v. H. S. Co.* (*Lofland et al., aplnts.*), 319 Pa. 174; *Lofland v. Fox,* 98 F. 2d 589 (cert. den., 305 U. S. 658)." Certiorari to United States Supreme Court denied (314 U. S. 673).

According to the record the receiver filed his account on August 2, 1939, after receipt of the fund awarded by the Circuit Court of Appeals. This amounted to $19,-242.90. It was the residue of the $36,000 accepted in compromise, less the amount awarded to Lofland because of his assigned claim, and less the fees, court costs and charges allowed by the court. After disposition of the proceeding to vacate the receivership, as above indicated, the court below proceeded to audit the account.

In addition to various claims with which we are not concerned in these appeals, Lofland (appellant in Appeal No. 41) claimed $6,203.35 for monies allegedly advanced by him in the defense of Avrach, the company president, from charges of arson and attempting to defraud the insurer. The auditing judge properly found that Lofland had not spent this amount in Avrach's defense, and awarded him only $3,257.62. Exceptions were filed by Lofland to this award and were dismissed by the court en banc. He thereupon appealed.

Lofland contends that the $6,203.35 claim for expenses incurred in the defense of Avrach has been adjudicated in his favor by the federal courts and is res adjudicata. We cannot agree with this contention, and the action of the court below, in awarding only $3,257.62 to Lofland, was not erroneous.

A reading of the record discloses that the federal courts did not decide that Lofland was entitled to receive $6,203.35 for the expenses incurred in the criminal proceedings. Lofland states in his own brief that *"The Special Master held . . . that he was only empowered to determine what Lofland was entitled to receive upon his two assignments,* and since all the moneys expended by him [in Avrach's defense] . . . were advanced *after* the said assignments, Lofland's claim was a proper one in the receivership proceedings in Delaware County and therefore *could not be paid out of the fund in the District Court."* We find nothing in the language of the master's report whereby jurisdiction is assumed over

claims made *after* the assignment; on the contrary, the master relinquished jurisdiction over the claim now in dispute because the money was advanced long *after* the assignment had been made.

Nor are we able to discover any statement that Lofland actually advanced the full sum of $6,203.35; the master never decided what sum Lofland was entitled to because it was not within his jurisdiction so to do. His report states in passing that: "This sum ($6,203.35) was *probably* advanced by Lofland, *much of it* certainly advanced, but it is not included in the terms of the assignment," and the Master is "unable to find anything in the record . . . which would justify . . . recommending the payment of this claim as a part of the moneys secured by the assignment." These statements certainly cannot be construed as a definitive finding that $6,203.35 is owing to Lofland; they are merely the gratuitous and extraneous remarks of the master about a matter which was admittedly not before him.

Moreover, in approving the report of the master, the District Court stated: "It is quite clear that the Master did, *in view of the disallowance of the claim for the defense fund,* give Lofland a very large measure of consideration in other matters." This language, if we attach any present significance to it at all, could only be construed as *rejecting* Lofland's claim; it cannot be interpreted as a determination that Lofland has a right to the full sum of $6,203.35. Lofland's contention that his claim for $6,203.35 was adjudicated in his favor by the Federal Court is, therefore, inconsistent with the facts. The action of the court below, in determining that Lofland was entitled to only $3,257.62 was entirely proper, and Lofland's argument that the claim is res adjudicata is devoid of merit.

The auditing judge charged the $3,257.62 allowed to Lofland with one-half the stenographic costs of the special master's hearing ($889.35). An exception to this assessment, taken by Lofland, was dismissed by the court

en banc and assigned as error here. Lofland's contention that he was erroneously charged with one-half of the stenographic costs is meritorious. In the federal court the receiver sought to place such costs on Lofland but the court refused to make the imposition. This refusal is binding on the Delaware County Common Pleas Court.

The master, in his report, states that: "By the stipulation entered into by the parties at the first meeting, it was agreed that the stenographer's costs and the Special Master's fee *should be paid out of the fund.* This is usual." Moreover, when counsel for the receiver advanced the thought that the special master should make the award subject to charge upon the amount payable to Lofland for his share of the expenses of the receivership, "the Special Master [gave] careful consideration to this suggestion and [dèclined] to accede it . . . He [declined] . . . to recommend that the award to Lofland be burdened with any share of the expenses of the Receivership."

When the District Court confirmed the special master's report it stated that: "The Master exercised a proper discretion in not charging the entire expense in this proceeding for distribution against Lofland's share of the fund." The Circuit Court held that, in refusing to charge these expenses against Lofland's share of the fund, the special master and the District Court had "exercised a proper discretion."

It is clear that the court below, in charging Lofland with one-half the stenographic expenses of the special master's hearing, is ignoring a prior adjudication of the federal court on the same matter, and the defense of res adjudicata is a proper one. The parties to the action in each court were the same, the costs sued for were the same, and there was identity in the quality of the persons involved. See *Siegfried v. Boyd,* 237 Pa. 55, 85 A. 72. "It is the settled law of this State that in the absence of fraud or collusion a judgment or decree of a court of

competent jurisdiction, valid and regular on its face, in force and unreversed, cannot be impeached by the parties or privies thereto or by a stranger in a collateral proceeding in the same or another court. It is conclusive not only as to the judgment or decree itself but as to every fact directly or necessarily adjudicated or which was necessarily involved in or was material to the adjudication." *Metzger's Estate*, 242 Pa. 69, 88 A. 915.

The auditing judge also charged the sum of $3,257.62 allowed to Lofland with the costs ($335.68) of the audit of the receiver's account. Lofland's exception to the assessment was dismissed by the court en banc, and Lofland complains of the charge in this appeal. It is well settled that in an equity proceeding disposition of costs is largely within the discretion of the court below and its decree will not be interfered with by this Court except where the court below has grossly misused its power. *Guckenheimer & Bros. Co. v. Kann*, 243 Pa. 75, 89 A. 807; *Miller v. Miller*, 118 Pa. Superior Ct. 45, 179 A. 251. We find no gross abuse of discretion here; on the contrary, there was ample justification for the imposition upon Lofland of the cost of the audit. There is evidence to show that it was his refusal to compromise that was largely responsible for this interminable litigation. Moreover, Lofland's award did not approximate his original claim, and some of his allegations during the course of this litigation have come very close to fraudulent representations. Much time and expense might have been saved if Lofland had not made so many dilatory moves and had recognized the futility of litigating claims, the bona fides of which has been suspected by the master and the various judges. Under the circumstances, the assessment upon Lofland of the cost of the audit was entirely proper.

Lofland complains of the award by the auditing judge of $1,705.10 in unpaid salary to Harry I. Avrach, president of the Hartford Sterling Corporation. The court en banc dismissed an exception to the auditing judge's

finding. The award is assigned as error by Lofland. The evidence produced was sufficient to support the finding of the auditing judge that Avrach was entitled to $1,705.10 earned but unpaid salary, and the finding of the court below will therefore not be disturbed on appeal.

Harry I. Avrach (appellant in Appeal No. 44), president of the insolvent corporation, claims $4,890.95 for monies advanced, prior to the incorporation of the company, in the purchase of the corporate assets from the federal receivers and the payment of various bills. Avrach originally advanced $19,890.95, but received reimbursement for $15,000 of this amount in the form of 150 shares of capital stock in the corporation, thus leaving a balance owed of $4,890.95. The auditing judge disallowed this claim, and upon dismissal of his exceptions by the court en banc, Avrach appealed.

It is contended that Avrach is not precluded from sharing in the distribution of the assets of the insolvent corporation, to the extent of the monies allegedly advanced by him for the corporate benefit, merely because he is the company's president and majority stockholder. This general proposition is not disputed. See *Miller v. S. Hills Lumber & Supply Co.*, 334 Pa. 293, 6 A. 2d 92. "Although a corporation cannot assume a private obligation of one of its officers where the funds are used for his private purposes (*Culver v. Reno Real Estate Co.*, 91 Pa. 367; *Fehr v. Campbell*, 288 Pa. 549; *Bank of Shamokin v. Waynesboro Knitting Co.*, 314 Pa. 365), it can do so where . . . the funds are borrowed and used for the benefit of the corporation; *Buse and Caldwell Dissolution Case*, 328 Pa. 211. See also *Siegel v. Chidsey*, 28 Pa. 279; *Walker v. Marine Nat. Bank of Erie*, 98 Pa. 574; *Larzalere & Son v. Tiel & Tooley*, 3 Pa. Superior Ct. 109."

Moreover, a corporation is an entity separate and distinct from its stockholders. *Green et al., v. Phila. Inq. Co.*, 329 Pa. 169, 175, 196 A. 32. A stockholder, who in good faith advances money to a corporation for the cor-

poration's benefit, is not necessarily precluded from sharing in the distribution of the assets upon the same terms as other unsecured creditors. *Hill v. Standard Telep. Mfg. Co.,* 209 Pa. 231, 58 A. 147; *Hooven Mercantile Co. v. Evans Mining Co.,* 193 Pa. 28, 44 A. 277. In the instant case, however, Avrach furnished all the capital for the corporation. The company was his instrumentality and when he put money into it, he put money into his own business as its sole owner, not in another's enterprise *by way of a loan.* It is true that Avrach only held 119 shares of the 150 shares issued. Of the remaining 31 shares, Thomas B. Ginley held 15, Ashley W. Hagey held 15 and Alfred T. Steinmetz held 1, as the company's nominal secretary. None of these parties, however, paid anything for their stock, and the certificates made out to them were never taken out. The learned auditing judge correctly stated that "The other stockholders were but figureheads. Avrach's control was absolute. The business was in reality his." Avrach was not a creditor dealing with a debtor corporation; he was lending money to himself. To permit him to share as creditor in the assets of a company, which is merely his creature, would encourage fraud and defeat the valid claims of other creditors.

There is another compelling reason why Avrach should not be reimbursed to the extent of $4,890.95. *Before* the incorporation of the new Hartford Sterling Company, Avrach forwarded seven checks totalling $5,982.85, to the receivers of the old corporation. He testified that these seven checks represented advancements to run the old corporation and were in the nature of loans to the new corporation. It is clear that these checks, payable to the receivers of the old corporation, were not given with the consent of the new corporation because, at the date of the last check (October 9, 1930), the new corporation had not yet gone through the formalities of organization. Nor does the evidence disclose any later action on the part of the new corporation rati-

fying the expenditures. The directors of the new corporation never agreed to assume as a loan by Avrach monies advanced to the receivers of the old corporation to run that corporation. Moreover, counsel has failed to show how the assets of the new corporation were enhanced by Avrach's advancements to the old corporation. Furthermore, Avrach did not look to the new corporation for reimbursement at the time the advancements were made; instead, he relied on receiver's certificates for security. Since he did not obtain these, he now seeks to recover against the insolvent new corporation to the prejudice of other creditors. His claim was correctly disallowed by the court below.

Abraham Wernick, Esq. (appellant in Appeal No. 45), complains that the court below erred in failing to allow him $2,500.00 in counsel fees for successfully appealing the conviction of Harry I. Avrach, president of the Hartford Sterling Company, to the Superior Court. The court below disallowed the claim against the corporation because it considered the contract engaging the attorney a personal contract of Avrach. Although the evidence is conflicting, we agree with the court below that the "testimony adduced did not support a claim against the corporation," but was an oral personal contract between Wernick and Avrach for professional services rendered Avrach. The only evidence that Steinmetz, the company's secretary, was a party to the contract, thus aiding the attempt of Wernick to bind the corporation, is the meager testimony of Avrach himself. When Wernick was engaged as counsel, the good name and liberty of Avrach were at stake. True, the corporation was assisted by the successful appeal from the conviction subsequently to recover part of the insurance fund. However, the corporation was merely the incidental beneficiary of a personal contract between Wernick and Avrach for the benefit of the latter. Without passing on the reasonableness of the amount of Wernick's claim, we see no reason to disturb the finding of

the court below that the claim is not binding on the corporation.

The decree of the court below, as modified, is affirmed.