## Erie Drug Company Case.

42

Argued October 6, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Warren W. Bentz*, with him *W. Louis Schlesinger*, for exceptants, appellants.

*John F. Potter*, with him *A. Grant Walker*, and *Gifford, Graham, MacDonald & Illig*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 10, 1964:

This appeal is from a decree of the Court of Common Pleas of Erie County dismissing certain exceptions to the first and final account filed by the First National Bank of Erie as receiver for the Erie Drug Company, an insolvent corporation.

The Erie Drug Company is a small corporation which was engaged in the wholesale drug business for

a substantial number of years in and around the City of Erie. Prior to his death on July 21, 1960, W. P. Webster was the controlling stockholder and thereafter his widow, Gladys S. Webster, succeeded to his stock and became president of the company. On September 6, 1962, the Court of Common Pleas of Erie County, sitting in equity, and acting upon Erie Drug's petition, appointed the First National Bank of Erie as temporary receiver to liquidate the corporation's assets. On September 27, 1962, First National was made permanent receiver. Its first and final account filed on September 13, 1963, showed distributable assets of $105,775.35 and unsecured claims due general creditors in the amount of $247,079.76.

Among the claims allowed were debts due Gladys S. Webster on a series of notes in the face amount of $84,000 and $12,707 in interest on that sum, computed at the rate of 6% to October 1, 1963. Also allowed was a debt due the receiver as a creditor of Erie Drug on a note in the amount of $26,000, plus $1,484.82 in interest computed at 5% to October 1, 1963.

Appellants, a majority of the general creditors, filed several exceptions to the receiver's account. The court below directed the receiver to amend its final account so as to eliminate $5,400 in interest allowed Mrs. Webster on a $60,000 loan for the period August 22, 1961, to September 22, 1963, which interest Mrs. Webster had failed to demand in her proof of claim. All other exceptions were dismissed. Since Mrs. Webster has taken no appeal, the matter before us involves only certain of the exceptions which were dismissed.

Appellants contend that Gladys S. Webster, being the principal stockholder, president, and director of the corporation, is not entitled to share pro rata in the distribution of assets among the general creditors. The general rule is that a corporation is an entity separate and distinct from its shareholders, *Green v. Philadel-*

*phia Inquirer Co.*, 329 Pa. 169, 175, 196 Atl. 32, 34 (1938), and that a shareholder who in good faith advances money to a corporation for the corporation's benefit is not necessarily precluded from sharing in the distribution of the assets upon the same terms as other unsecured creditors. *Hill v. Standard Tel. Mfg. Co.*, 209 Pa. 231, 58 Atl. 147 (1904); *Hooven Mercantile Co. v. Evans Mining Co.*, 193 Pa. 28, 44 Atl. 277 (1899). Appellants, however, rely on *Gordon v. Hartford Sterling Co.*, 350 Pa. 277, 38 A. 2d 229 (1944), where the sole actual shareholder of an insolvent corporation was denied a pro rata share in the distribution of assets among general creditors.

After careful consideration of the record, we must conclude that the chancellor correctly allowed Mrs. Webster's claim for the principal sum due on her notes. The exception to the general rule which the *Gordon* case embodies is not applicable on the facts of the case presently under consideration. The *Gordon* holding resulted from a corporate situation readily distinguishable from that which existed in the Erie Drug Company. The corporation in *Gordon* was a mere form, an instrumentality of the shareholder-creditor. The result was that the loan from the creditor-shareholder to the corporation was a loan to the creditor himself, only in a different form. The Court in *Gordon* recognized this factor as generating an exception to the usual rule. 350 Pa. at 288, 38 A. 2d at 234. There is, furthermore, no evidence whatever of bad faith which would operate to remove the case from the general rule stated above. It is quite evident that the loan by Mrs. Webster was bona fide. The court below, in distinguishing the *Gordon* case from the instant situation, properly stated the governing considerations and correctly applied them to the instant facts.[1]

---

[1] Excerpt from the opinion of the court below: "The prime reason for the court's decision in that case [*Gordon v. Hartford*

Appellants also contend that the $12,707 of Mrs. Webster's claim which represents interest dating from March 20, 1956, to October 1, 1963, should not be al-

---

*Sterling Co.*] was that the company was the stockholder's instrumentality and when he put money in it, he was, in effect, lending money to himself. . . . [I]t should first be noted that the Supreme Court in Gordon reiterated the principle—often announced in other cases—that a stockholder, who in good faith advances money to a corporation for the corporation's benefit, is not necessarily precluded from sharing in the distribution of assets upon the same terms as other unsecured creditors. While the court departed from this principle in the Gordon case, it pointed out that the other, nominal stockholders in the corporation paid nothing for their shares and no stock certificates were ever issued to them. Further, the debt due the sole stockholder arose out of advancement made to the corporation before it was formed for the purpose of buying the assets with which it commenced business, and the sole stockholder received his control of the corporation through the issuance of stock to him as a partial repayment of his advancements. The debt thus created was not the result of money loaned in the regular course of company business, but was merely a financing arrangement to permit the sole stockholder to form a corporation and gain its control.

"In this case there is no evidence whatever that the other stockholders of the corporation, either before or after Mr. Webster's death, were not, in fact bona fide stockholders in every sense of the word. Neither Mr. and Mrs. Webster combined, nor Mrs. Webster alone, following her husband's demise, were ever the sole stockholders of the company. Whereas in the Gordon case the indebtedness was to the sole stockholder, the indebtedness in this case was to a substantial stockholder; whereas in the Gordon case the indebtedness was a fiction for the purpose of enabling a sole stockholder to form and operate a corporation as an individual enterprise, the indebtedness here was very real and genuine. Every dollar loaned by Mrs. Webster to the corporation was loaned after the corporation was formed and for the purpose of promoting the best interests of the company. There is a total absence of any evidence that the indebtedness was not created in good faith for the benefit of the company or that there was any double-dealing, fraud or improper purposes in the transactions.

". . . [I]n matters of this nature each case must be judged upon its own facts; . . . if there is to be a departure from the general

lowed on the theory that Mrs. Webster never intended to be repaid in the ordinary course of business, and waived her right to interest. This contention was properly disposed of by the court below which found no waiver in her failure to cash the interest checks in light of the existing circumstances.[2]

In addition, appellants advance an argument dependent, in part, on alternative theories. They first argue that none of the claimants, including themselves, Mrs. Webster, and the First National Bank of Erie, are entitled to recover interest for the period after the appointment of the receiver. Whatever may be the rule elsewhere, we must agree that, since the estate is insolvent, interest may be allowed to the general creditors only to the date of receivership. *Mortgage Bldg.*

---

legal principle allowing distribution to a stockholder-debtor [creditor], it can be had only upon unusual and extraordinary facts, none of which appear here. Of course, where there is fraud or bad faith, the offending stockholder should not be allowed to profit by his own deceit . . . . [I]n a case such as this, where money was actually loaned to the company for business; where the lending stockholder actually paid interest due on company obligations from her personal funds in order to keep the company afloat; where the stockholder-creditor refused to cash interest checks issued on notes due to her by the company, and where the officers of the company, at times, declined to accept salary so as . . . not to deplete company funds, the picture is so devoid of evidence of bad faith, fraud or covin among the stockholders and officers that the general principle of allowing a stockholder-creditor to participate in distribution pro rata with other creditors should not be disturbed."

2 The court concluded: "At the most, such failure constituted only a postponement of the debt as evidenced by the fact that the checks were entered on the books and were not destroyed. It is clear that the company officers felt that interest was due Mrs. Webster or the checks would not have been issued, and in the light of her persistent efforts to promote the financial interests of the corporation at the hazard of her own fortune, it is obvious that she was merely deferring her own rights so that the corporation might have a chance to once more become a going concern."

& *Loan Assn. Case,* 334 Pa. 81, 5 A. 2d 342 (1939) ; 16 Fletcher, Cyclopedia of Corporations §7937 (1962 rev. vol.). Interest which has been allowed Mrs. Webster and the bank for the period after that date must be eliminated, and the account of the receiver must, in that respect, be modified.

Appellants have also contended that as merchandise creditors, they are entitled to interest running from the due dates of the corporation's obligations to them. They submit that the due date of these obligations must, at the latest, be considered the date on which the company was placed in receivership, September 6, 1962. As an alternative to their argument recited in the paragraph above, they urge that if interest is to be allowed to anyone after the date of the receivership, they are also entitled to interest. Since we have held that interest terminates with respect to all general creditors as of the date of receivership, we need only consider whether appellants are entitled to interest prior to that date. The court below, while allowing interest claimed by Mrs. Webster and the bank for the period prior to the receivership, denied any interest on appellants' claims, on the ground that, while Mrs. Webster and the bank properly claimed interest, the other creditors failed to do so. The court took the position that the "receiver could not allow an amount in excess of a claim and, even if inclined to do so, was not in possession of sufficient facts upon which to base a judgment as to when the interest period was to begin." In challenging this determination, appellants have made several assertions which were not advanced below, including, among others, allegations that the receiver gave no notice to file proofs of claim, and that no order was ever made by the court fixing a deadline for filing claims. Since it is well settled that this Court will not review questions that were not raised in the court below, *Rimpa v. Bell,* 413 Pa. 274, 196 A.

48

2d 738 (1964), we must affirm the denial of interest to appellants.[3]

Finally appellants contend that the receiver should have secured and accounted for interest on $104,351.47 which it held since about March 22, 1963.[4] This argument also must fail because it was not raised in the court below.

The decree, as modified in accordance with this opinion, is affirmed and the case is remanded for further proceedings consistent herewith. Costs to be paid out of corporate assets.

---

[3] Moreover, a petition filed by the receiver on September 13, 1963, concurrently with its account, alleged that the receiver had carefully checked the books and records of the company for an accurate determination of the amounts due and owing creditors, had duly notified such creditors, and had received proofs of said creditors' claims, which claims appeared to be in accordance with the insolvent's records. Significantly, no challenge to this averment was ever made in the court below by appellants.

[4] The receiver, First National Bank, deposited the funds in an ordinary checking account in the commercial department of its own banking institution.