Gordon, Secretary of Banking, *v.* Hartford Sterling Co. (Lofland et al., Appellants).

Argued April 22, 1935.   Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Charles S. Shotz,* for appellants.

*Frank A. Moorshead,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 27, 1935:

The Hartford Sterling Company, a Pennsylvania corporation, was engaged in business in Delaware County. In March, 1931, two fires destroyed a great part of the plant with its contents. Shortly thereafter the company let a contract to Lofland to repair the buildings and restore the machinery for the sum of $27,232. The company carrying insurance aggregating $113,500, claimed a loss through the fire of $73,000. The company assigned to the contractor, as collateral security for the payment of the contracts, $26,700 of the insurance policies. Two suits were entered in the federal court, one by the Sterling Company and Lofland, and the other by Sterling Company, Wolcott and Steane, mortgagees, and Lofland against the insurance company. Later, the Lansdowne Bank & Trust Company, now in the hands of the state liquidator, the secretary of banking, as receiver, obtained judgment against the Sterling Company on its note for $22,000. The receiver of the bank petitioned the Court of Common Pleas of Delaware County to appoint a receiver for the Sterling Company. Such order was made and later the receiver of the company presented a petition to that court for authority to compromise the suits against the insurance companies on the policies for $36,000. The court below, on making the order prayed for, held that, since one of the policies is subject to a

mortgage clause, the holders of the mortgage are entitled to preference under the mortgage clause if they have any claims against the Sterling Company, which is disputed, and the balance is to be appropriated first to the claim of Lofland, then to general creditors, barring, of course, any preferred claims for counsel fees or others which might be proved against the fund.

·Lofland, who is the active party appellant, admits that in the appointment of the receiver and in the proceedings looking forward to a compromise of the suits he took an active part, thus submitting himself to the jurisdiction of the court below. However, he contends that the decree entered was one which the court below could not make, arguing that where by decree a receiver is ordered to compromise a claim or suit based on a chose in action, against the objection of an assignee for valuable consideration of part of the claim, where assignment was made prior to the appointment of the receiver, such decree impairs the obligation of his contract. See Phila. Trust Co. v. Traction Co., 258 Pa. 152, 166; Northampton Trust Co. v. Traction Co., 270 Pa. 199. We need not decide that interesting question as appellants raise it for the first time in this court. At no time during the progress of the litigation was the question raised that the proposed order would violate rights protected by the federal Constitution. Where a question is presented for the first time to an appellate court, that court will not consider it on appeal unless it involves error that is basic and fundamental: Kohn v. Burke, 294 Pa. 282; Allegany Gas Co. v. Kemp, 316 Pa. 97; Boro. of State College v. Pontius, 112 Pa. Superior Ct. 440; Schline v. Kine, 301 Pa. 586; Foulk v. Hampton, 299 Pa. 272.

The primary question involved was whether the court had the power to authorize the receiver to compromise these claims over the objection of several creditors. We do not consider the question now raised as basic or fundamental for the following reasons: The assignment was for a part of the claim recoverable under the insurance

policies. It was a partial assignment. We have early held that partial assignments are not binding unless they have been assented to by the debtor (Jermyn v. Moffitt, 75 Pa. 399; Philadelphia's Appeals, 86 Pa. 179; Geist's App., 104 Pa. 351; Vetter v. Meadville, 236 Pa. 563; Wells v. Phila., 270 Pa. 42) ; the reason advanced is that a creditor should not be permitted to split up a single cause of action into many without the assent of the debtor; to do so subjects the debtor to embarrassments, responsibilities and multiplicity of suits not contemplated in his original undertaking. It was held in Jermyn v. Moffitt, supra, that the assignment of part of a debt will not bind the debtor, either in equity or at law, nor deprive him of the right to pay the whole to the assignor, even after notice that a part has been transferred to the assignee. This latter principle was emphasized in Geist's App., supra, where an attempt was made, through partial assignments, to lay hold of a fund held by the City of Pittsburgh, for one of its creditors. The creditor made an assignment for the benefit of creditors; his assignee disregarded the claims of the partial assignees and collected the debt from the city; we held that the partial assignments did not bind the fund or any part of it. Therefore, where an assignor assigns a part of his claim, he is still the principal creditor and retains control of the claim unless the debtor accepts the assignee as a new creditor to the amount of the assignment. In the instant case there is no evidence that the insurance company assented to the assignment.

The action against the insurance company was instituted in the names of Sterling Company, creditor, and Lofland, assignee. There is no objection to the suit being thus instituted. Where part of a chose in action has been assigned, the assignor and the assignee may unite in a suit for the enforcement of the chose; the assignor may sue alone, but the assignee may not sue on it in his own name: 5 Corpus Juris 999.

The right of the Sterling Company to settle, compromise and otherwise dispose of the claim, the assignment of which had not been accepted by the debtor, is clear and indisputable, the assignee of part of it could not prevent it, he had no lien on the fund and his assignment did not bind the fund in any respect: Jermyn v. Moffitt, supra; Geist's App., supra. To fasten a lien on the fund where the assignment is only of a part of it, the assent of the debtor must be averred and proven: Vetter v. Meadville, supra.

The receiver of Hartford Sterling Company, the creditor, under authority of the court, possessed the rights of the creditor subject to certain limitations. He petitioned the court for authority to compromise the claim. Because of the receivership the creditors of Hartford Sterling Company have a right, which they did not before possess, to object to the compromise. But, Lofland's right in this respect rises no higher than that of any other creditor. The general rule is that a court in the exercise of its equitable power has the authority to empower a receiver appointed by it to compromise doubtful claims: Volume 23, Am. and Eng. Ency. of Law, 1080; Alexander v. Maryland Trust Co., 106 Md. 170; Clark on Receivers, section 560; MacDonald v. Ætna Indemnity Co., 88 Conn. 571; 53 C. J. 147.

An order to compromise claims by receivers is within the discretionary power of the court appointing the officer; it will not be set aside unless it is unreasonable or amounts to a clear abuse of discretion. The question for the receiver and the court to decide in cases of compromise is one of business conduct, whether such action is prudent in the administration of the assets of the estate. The decision calls for weighing and balancing a variety of considerations. It involves the probable validity of the claim, the apparent difficutlies attending its enforcement through the courts, the collectibility of the judgment thereafter, the delay and expenses of the litigation to be incurred, and the amount involved in the compro-

mise. These are all factual considerations though some have a legal aspect. An appellate court is not in a position to make as intelligent a decision on these questions as the court before whom the matter is heard; unless the discretion lodged in courts appointing receivers is abused or unreasonably exercised, the decision of such courts will be final. While a receiver is an officer of the court, he steps into the shoes of the owner to administer his estate for the benefit of the creditors under the direction of the court; under it he has all the powers of the owner. See Pearson Mfg. Co. v. Pgh. Steamboat Co., 309 Pa. 340, 345. The power to be exercised is not an arbitrary one, but should be such as conserves the best interest of the estate, realizing as much as possible on its assets. This rule has been recognized by all the courts. Fletcher on Private Corporations (2d ed.), section 7827, states that the right of a receiver to compromise claims with the approval of the court is beyond doubt, provided the claim is still in dispute and doubtful as required by the general law on compromise.[1]

When creditors of insolvent estate, or any number of them, object to a compromise, the courts have adopted different rules of action. In many receivership cases the courts have held that the desire of the majority in numbers and amount of the creditors is entitled to great weight, and ordinarily their wishes will not be disregarded.[2] In bankruptcy where compromise of claims are quite numerous, the courts will disregard the wishes of the majority if it believes the best interests of the bankrupt estate will benefit by it.[3] What is emphasized in all

---

[1] Jackson v. Horton, 126 Ill. 566; Alexander v. Md. Trust Co., 106 Md. 170; Brooks v. Neal, 223 Mass. 467; Morrison v. Lin. Sav. Bk., 2 Neb. (Unoff.) 672; In re Croton Ins. Co., 3 Barb. Ch. (N. Y.) 642; United States v. Church, 6 Utah 9.

[2] MacDonald v. Ætna Indemnity Co., 88 Conn. 571.

[3] Remington on Bankruptcy (3d ed.), section 1151; In re Meadows, Williams & Co., 181 Fed. 911; In re Goldman, 241 Fed. 385; In re National Artificial Silk Co., 272 Fed. 938; Drexel v. Loomis,

cases is the best interests of the estate, the possibility of recovering in the litigation and collectibility thereafter of any judgment obtained.

As a general rule where a claim in receivership is doubtful and application is made for authority to compromise, to which creditors object, the court should approach the question from a business standpoint and make the same inquiry as in the ordinary cases of compromise where no objection is made, that is, as to the validity of the claim, difficulty of enforcement, delay and expense, and collectibility thereafter; an objection by creditors should present some substantial reason why the compromise should not be ordered. Ordinarily the receiver who takes charge of the property is bound by the contracts existing when he takes possession: Wigton v. Climax Coal Co., 270 Pa. 420. The mere fact that creditors are "willing to take a chance" will not be sufficient to stay the hand of the court, in directing a compromise if the best interests of the estate are not served by so doing. If inquiry discloses a claim doubtful in fact and in law, this court will not reverse an order directing a compromise to be made unless there has been an abuse of discretion. The facts in this case show that if a claim should be compromised, this is one of those claims.

The fire which caused the damage to the plant and contents was charged to be of incendiary origin, alleged to have been started by the president of the Sterling Company. He was arrested and convicted of arson; a new trial was granted by the Superior Court. The claim ordered compromised was thus subject to the defense of arson or fraud. It would carry much weight with the jury. One of the largest items of loss was the damage done to 10,000 chucks, $36,384. The company records show only 6,000 chucks, the balance must be accounted

35 Fed. (2d) 800. Compromise was refused in In re Heyman, 108 Fed. 207; In re Barde, 207 Fed. 654; In re Woodend, 133 Fed. 593; In re Kinnane Co., 221 Fed. 762.

for by oral evidence depending on recollection. The appraisement of the 6,000 was $3,500. One of the appraisers was Hagey, who now objects to the compromise. He, with other employees of the company, itemized the chucks involved in the fire and valued them at $16,000, or $20,000 less than now claimed. They delivered that statement to the insurance adjuster. The court below, in making the order to compromise, considered these inconsistent statements with their possible effect on a claim of $73,000. Moreover, it would be difficult to account for all the property for which loss is claimed, for instance, the $7,600 worth of chemical solutions, and the $14,739 worth of machinery. The three items mentioned make up over $58,000 of the $73,000.

The claims opposing the compromise amount approximately to $34,000, including Lofland's $27,000, which appellee says will be reduced to $14,000 when the case is heard. On the other hand, the claims including the banks, the mortgagees, receiver and others in favor of compromise about balance those opposed.

Counsel first representing Lofland favors the compromise, as do the receiver and his counsel, the secretary of the Sterling Company, the mortgagees and a number of attorneys. The court below in applying its judicial knowledge to the difficulties attending this class of litigation found the probability of success very slight and the litigation expensive, inconvenient and attended with long delays. The compromise was ordered and we do not find in it any abuse of discretion.

The decree is affirmed at the cost of appellants.