**In re TINKOFF.**

**TINKOFF v. CHICAGO TITLE & TRUST CO.**

**No. 5778.**

Circuit Court of Appeals, Seventh Circuit.

July 16, 1936.

Rehearing Denied Oct. 1, 1936.

Paysoff Tinkoff, of Chicago, Ill., for appellant.

Frank T. Huening and Charles D. Woodruff, both of Chicago, Ill., for appellee Title & Trust Co.

Leland K. Neeves, of Chicago, Ill., for appellee First State Pawners Soc.

Before EVANS, SPARKS, and AL-SCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The debtor took this appeal from an order of the District Court of January 20, 1936, dismissing her amended petition filed November 18, 1935, for relief under section 74 of the Bankruptcy Act, as amended (11 U.S.C.A. § 202).

The amended petition, filed a few days after the filing of her original petition, states that the debtor seeks composition or extension of her debts under section 74 of the Bankruptcy Act, as amended; that she is unable to meet her debts as they mature; that an emergency exists through the pendency and prosecution of certain suits against her; that she owns a home of value largely in excess of a mortgage indebtedness thereon, for which Chicago Title

& Trust Company, as trustee under the mortgage, is prosecuting a suit for foreclosure; that she owns personal property whereon First State Pawners Society holds a lien, which property is of value many thousand dollars more than the lien thereon; that she has other personal property which is subject to execution, and which had cost over $100,000 and which is of the reasonable value of over $30,000; that her said real estate has a value of $150,000 to $200,000, subject to the Chicago Title & Trust Company's mortgage thereon of about $40,000; that since December 7, 1934, her husband has been illegally imprisoned at the United States Penitentiary at Leavenworth, and that prior to his imprisonment he had always attended to her business affairs; that she is a person without experience in these matters, and that, under prison rules, she was prevented from conferring with her husband until on or about November 11, 1935, when, pursuant to an order of the federal court in Kansas, she obtained permission to confer with him respecting the suits which had been brought against her, and respecting also the commencement of this action for her relief; that, pursuant to her conference with her husband, the petition herein was filed; and that in the emergency she was unable to prepare her schedules, and asked that further time be granted her for filing them.

The District Court, having examined the amended petition, granted leave to file it, and gave the debtor twenty days within which to file her schedules, and restrained until December 9, 1935, certain creditors, including those above named, from prosecuting their claims, and continued the cause to December 9, 1935.

It appears that on or about December 2, 1935, debtor's husband was, under order of the United States Circuit Court of Appeals for the Tenth Circuit, temporarily released from his imprisonment (Tinkoff v. Zerbst, 80 F.(2d) 464); and that on December 10 he entered his appearance in this cause as one of counsel for the debtor; and that, on this day, the motion for the restraining order was, by the court, referred to a referee, as was also the debtor's petition, the petition of certain intervening creditors, and the answers of debtor and of creditors; that the referee granted the debtor five days more in which to file her schedules; and that the schedules were not filed within the extended time, and no additional time was requested or granted.

On December 17, on motion of a creditor, the referee set for a hearing, for December 24, the question whether debtor's petition complied with section 74 and was filed in good faith.

On December 21, debtor filed schedules, which she described as "TEMPORARY"[2] and the verification thereof contained the words, "made from memory and to be corrected and amended by verification of records at an early date."

On December 24 debtor's attorney asked the referee to continue the hearing set for that date, and over protest of the creditors the referee continued it to January 2, 1936, at 11 a. m., directing that the debtor file, within four days, a detailed statement of personal property owned by her, which, in the schedule filed, she had described merely as "Oriental rugs, art objects, jewelry, furs, silver, linens. $135,000."

On December 30, 1935, debtor's attorney appeared and moved for more time to file the detailed statement, and for continuance of the hearing which had been set for January 2. A petition by debtor's husband was also presented at this time, stating, in substance, that he was the only person who has knowledge of his wife's property; that it was his intention to assign to her sufficient property to pay off her creditors; that he was busy preparing the appeal to this court of his criminal case; and that he desired until January 9, 1936, to file the schedule, and until January 13 for the hearing; which requests, the referee's report states, were granted upon the assurance of debtor's attorney "that no further continuances would be requested, that a proper statement of the debtor's personal property would be filed by January 9, 1936, that the debtor would be present in court on January 13, 1936, and that the attorney for the debtor would without fail proceed at that time with the hearing on whether the petition of the debtor complies with section 74 and was filed in good faith."

The report further states that on January 13, 1936, the detailed statement had not been filed, and the debtor was not present; and that Attorney Fine, acting for the debtor, there asked suspension of the proceeding for thirty days, presenting his petition stating that the debtor's husband had been released from his imprisonment about December 2, 1935, and was busy with his own appeal of his criminal case, and had also been ill, so that he was unable to pre-

pare the schedules, and that Fine also was busy and could not do the work; and that he (Fine) believed that the debtor, if given time, would work out a satisfactory plan for the payment of all her debts. This motion was denied by the referee.

On the same day, before Judge Lindley, sitting for Judge Wilkerson, the same motion was made for a thirty-day suspension. The motion was continued to January 20.

On January 17 the referee filed his report recommending dismissal of debtor's petition; and on January 20 Judge Wilkerson approved the report of the referee and dismissed the petition.

Thereafter, the court was fairly deluged by the debtor and her remaining attorney (Fine having withdrawn) with motions, petitions, and suggestions in great variety. There was presented, on January 23, a more detailed schedule of her personal property. There was also then presented a further suggestion of a plan, which repeated in varying form the prior suggestions for "refinancing," setting forth the great excess in value of her properties over and above the respective liens thereon, and indicating as the means for such refinancing the assistance which her husband would extend her if and when he collected from other clients attorney's fees he claimed to be due him from them in excess of $200,000; and suggesting as an alternative plan procurement of sufficient funds, on the security of her property, from some financing company or insurance company, both unnamed, and without any indication of the possibility of securing any such loan.

These proceedings and propositions all came after the debtor's petition had been definitely dismissed by the court, and with the manifest purpose of having the court set aside its previous order of dismissal and proceed further under the amended petition which had theretofore been dismissed.

These subsequent proceedings and propositions, coming after the petition had been dismissed, did not purport to be the institution of another proceeding under section 74, following the dismissal of the first one, and cannot be regarded as having such status.

The numerous and more or less voluminous petitions and briefs and arguments from time to time submitted to this court by the debtor assume to raise questions which, for the most part, are of no relevancy to what must here be determined in order properly to dispose of this appeal from the court's order of dismissal of January 20, the propriety of which is here the sole issue.

One of the propositions put forth, if we correctly understand it, is that, once the District Court receives the petition and it is filed, the good faith of the debtor in presenting it is thereby determined, and may not thereafter be again considered by the District Court. With this proposition we are not in accord, but are of the opinion that if at any time in the proceedings the District Court finds that the proceedings were not instituted or prosecuted in good faith, the debtor's petition may be dismissed.

It is insisted that the District Court had no power to refer to the referee the question of good faith or compliance with the statute. Section 74 (a) (11 U.S.C.A. § 202 (a) ) provides: "Upon the filing of such a petition or answer the judge shall enter an order either approving it as properly filed under this section, if satisfied that such petition or answer complies with this section and has been filed in good faith, or dismissing it."

Section 1 (16) of the Bankruptcy Act (11 U.S.C.A. § 1 (16) ) provides: " 'judge' shall mean a judge of a court of bankruptcy, not including the referee." Under the Bankruptcy Act (11 U.S.C.A. § 1 et seq.), a referee is a quasi-judicial officer who gives judgment or final order upon matters properly submitted to him, subject to review by the District Court on the petition of an interested party. Adjudications of the referee, if not reviewed within the time and in the manner prescribed, have the force and effect of judgments and orders of the District Court.

Had the order of dismissal been made by Referee Sullivan, his power to make such an order would be at least questionable. But, while the reference to him was nominally as referee, it was evidently not contemplated he should treat it in the capacity of a statutory referee in bankruptcy, but that his function should be essentially that of a master in chancery who was to hear the questions submitted, receive the evidence, and report to the court, with whatever recommendations he might see fit to make. This is what was actually done. But no question here arises as to the hearing and reporting of evidence, for none was submitted. The proceedings were all

by way of motions and the like, manifested by writings filed, which speak for themselves and were to all intents just as much before the judge as before the so-called referee. The report to the court indicated what the proceedings were, and the motions and other writings spoke for themselves as well. While the court approved the report, the order of dismissal was not by the referee, but by the court itself. We are satisfied that, under this particular state of facts, the reference did not vitiate or otherwise affect the validity of the ultimate order of the court itself whereby this petition of the debtor was dismissed. In re Rubin (C.C.A.) 1 F.(2d) 157.

Under section 74 the functions and duties of a referee are not substantially otherwise than in bankruptcy matters generally. We have questioned, and do question, the right of a referee to adjudicate the question of the good faith of proceedings under section 74, although in this case the referee did not undertake so to do. His report merely points out his efforts to accelerate the proceedings, and the debtor's state of persistent unreadiness to proceed, together with the referee's comments and recommendations.

It appears that neither before the District Court nor before the referee was any question raised as to the referee's power to act under the reference; but perhaps the stage had not yet been reached where objection could well be interposed, since the efforts of the referee appear to have been directed to making progress in the hearing, as against the continuous sparring of debtor's counsel for further time.

But the substantial question is, whether under this record the court was warranted in dismissing the petition at the time the order to that effect was entered. Did the debtor's petition sufficiently comply with section 74? Did the debtor seasonably file with the court a proper schedule of her assets and liabilities? Was the debtor's petition presented in good faith? Had the debtor diligently prosecuted her proceeding for the relief she sought?

The most important inquiry, and the one in which the others are in large measure bound up, is as to the debtor's good faith in presenting and prosecuting her petition. Good faith or the want of it may be determined not only from conditions as they existed at the time the petition was filed, but may be influenced by subsequent proceedings and acts. If one filing such a petition willfully neglects and refuses to present proper schedules, or to take other steps reasonably necessary for expediting the proceedings, this may justify the conclusion that the debtor is not in good faith prosecuting his undertaking, and did not in good faith begin it.

One can scarcely peruse this record without concluding that for some reason or other there was originally, or that later there developed, a deliberate purpose to withhold the presentation of proper schedules, and to make reasonable progress in the proceedings. Only a short time before the order of dismissal was entered motions were made, both before the referee and the court itself, for a thirty-day extension for filing schedules and for hearings. And when the court, in evident disapproval of the frequent delays and the frequent applications therefor on behalf of the debtor, and her persistent unreadiness to proceed, entered the order of dismissal, then, notwithstanding affidavits and petitions presented stating the need of the longer delay, a very few days after the dismissal detailed schedules were forthcoming, as were also tentative plans (such as they were) for the requested relief. With the merits or demerits of these subsequent proposals and offerings we have nothing to do, concerned as we are with the state of the record at the time of the dismissal, and not, in this proceeding, with what was subsequently proposed.

The peculiar relation of this debtor to her property, arising out of the fact that, as alleged, it was derived from her husband, who had special knowledge of the items of it and its cost and value, and his alleged unlawful imprisonment in the penitentiary, where, as above stated, she had but little opportunity to confer with him respecting her property rights, is much stressed as bearing on the debtor's rights and the court's duty under such unusual circumstances. Assuming for the purposes of the case that the debtor was the owner of the real and personal property she claims, and had very little knowledge of details concerning it; that her husband had originally acquired it, transacted all business with reference to it, and had special and even exclusive knowledge respecting it; all such facts, coupled with the fact of his imprisonment, whether legal or illegal, just or unjust, did not invest this debtor with exemptions and privileges which should enable her to override or

transgress the just and reasonable rights of others.

The unfortunate situation of her husband, and its doubtless distressing effect upon her, would very naturally incline the court toward indulgence in her behalf. But it is evident from what is before us that much indulgence was extended to her because of her situation. Whether she should have been yet further indulged is a matter which lies within the discretion of the bankruptcy court and is not reviewable on appeal, unless it is apparent that that court's discretion was abused or oppressively exercised. This, in our judgment, does not here appear, and we would not be justified, out of any such consideration, in disturbing the order which is the subject matter of this appeal.

We are not impressed with debtor's contention that a feasible plan of adjustment under section 74 was or could be presented. The allegation that her husband had clients who owed him over $100,000 of attorney's fees (which he later stated to be $200,000) with which he would pay her creditors, and even his own proposal to so apply his assets (even if it had been made before instead of after the dismissal), are altogether too vague and indefinite to enable the court to consider it a workable plan. And so also as to the suggestion that some unnamed refinancing or insurance company would step into the breach. There would be no error in refusing to accord serious consideration to such propositions. While the statute does not fix a specific time within which such plan must be forthcoming, the debtor's suggestions of plans so unreasonable and unworkable may well have been considered by the judge in determining whether or not her petition was presented and prosecuted in good faith.

We are well satisfied that in failing to present necessary and proper schedules within the times fixed therefor the debtor failed to comply with the requirements of the statute; and that this, together with her apparently persistent refusal to proceed with her case, and her presentation of unreasonable and unworkable plans for readjustment under section 74, warranted the court in concluding that her proceeding was not in good faith instituted, nor diligently and in good faith prosecuted, to obtain relief contemplated by section 74, but was begun and maintained to hinder and delay her creditors, thus justifying the or-der of dismissal from which this appeal was taken.

The referee's report, which is embodied in the transcript, presents a helpful and more detailed discussion of most of the above propositions, but because of its length its inclusion herein would be impracticable.

Since we find no substantial error intervened in the entry of the order of January 20 dismissing the debtor's petition, that order is accordingly affirmed.