Brunswick Corporation *v.* Ciaffoni et al., Appellants.

Argued March 15, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 13, 1968.

*Thomas O. White*, with him *Milton D. Rosenberg*, and *Bloom, Bloom, Rosenberg & Bloom*, for appellants.

*John G. Buchanan, Jr.*, with him *William R. Newlin*, and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger*, for appellees.

OPINION BY MR. JUSTICE O'BRIEN, November 12, 1968:

This is an appeal from the order of the Court of Common Pleas of Washington County, awarding personal property to the plaintiff-appellees.

One Isadore Toder, under an agreement dated July 30, 1960, leased certain property from appellants, Paul Ciaffoni and Peter Ciaffoni, who owned the property as tenants in common. Under a Rider Agreement which formed part of the lease and which was signed by both

appellant landlords, the lease was assigned to Mc-Donald Bowl, Inc. (McDonald), a corporation formed by Toder to start a bowling alley. The lease was for a term of ten years, for a total rent of $119,520, payable $11,520 at signing of the lease and $1,000 per month. It provided, in case of default, for confession of judgment, and in the event of default, bankruptcy, or insolvency, for the entire balance of the rent to become due and payable. Provision was made permitting the lessor to distrain for rent on all property found on the premises.

However, the rider provided that a landlord's waiver of the right to distrain in a form as was attached would be executed in order to permit the tenant to finance the purchase of bowling alleys and equipment. The attached form was an unexecuted general form of waiver covering Brunswick automatic pinsetters and naming as the protected seller Brunswick Automatic Pinsetter Corporation. The only waiver that was executed was to the benefit of Brunswick Corporation and was signed only by Paul Ciaffoni and his wife, and acknowledged on September 16, 1960.

McDonald proceeded to purchase under conditional sales contracts a great deal of bowling equipment from Brunswick Corporation and Brunswick Automatic Pinsetter Corporation. These corporations filed proper financing statements and became secured creditors. McDonald then defaulted in its obligations to both Brunswick corporations and to the landlords.

On May 3, 1962, in the U. S. District Court for the Western District of Pennsylvania, McDonald was adjudicated a bankrupt. On July 5, 1962, the Referee in Bankruptcy entered an order that appellees were "entitled to take possession of the personal property" that is here in dispute. When appellees sought, on July 20, 1962, to remove the equipment, Paul Ciaffoni

instructed employees of Brunswick to leave the premises and they departed voluntarily. Paul and Peter Ciaffoni then, on July 23, 1962, distrained for rent on the equipment, taking possession of it.

On July 30, 1962, appellees filed this action in replevin with bond of $300,000. Appellants not having filed a counter bond, the appellees repossessed the property on September 15, 1962.

After a nonjury trial, the Honorable BARRON P. McCUNE made an order awarding to Paul Ciaffoni his one-half share of the rents in default since Paul had not signed the waiver agreement. On appellees' exceptions, the court en banc vacated the prior order and in an opinion by Judge McCUNE, ordered judgment for appellees, with costs on appellants.

The court en banc was of the view that appellees were creditor beneficiaries of the rider provision in which appellants agreed with Toder to sign a landlord's waiver in favor of appellees. Since equity regards that done which ought to be done, the court held that by virtue of the provision in the rider, Peter Ciaffoni, as well as Paul, had waived his right to distrain as a landlord.

We find it unnecessary to consider this third party creditor beneficiary theory by which the court en banc resolved the case. Nor need we consider whether appellees' recovery can be justified on a donee beneficiary theory,[1] or a unilateral contract theory,[2] or a construc-

---

[1] Appellees urge that even if they are not creditor beneficiaries, they are donee beneficiaries whose rights have vested, because either; (a) no knowledge of the contract and assent to it are necessary for a donee beneficiary's rights to vest or (b) if they are necessary, they have impliedly been met.

[2] Appellees claim that appellants, in the rider, promised a waiver to anyone actually providing McDonald with financing for its bowling supply purchases. Acceptance of the offer was to be unilateral, i.e., by the act of providing the financing.

tive trust theory.[3] We are of the opinion that the issue of the right to possession of the disputed bowling equipment has already been finally litigated in the bankruptcy action in the federal court and that we must abide by that decision.

Judge McCune originally found Paul Ciaffoni's distraint proper, holding that the property passed out of *custodia legis* at the time of the Referee's order and thus became a proper subject for distraint. The court *en banc* did not pass on the effect of the Referee's order.

We hold that the bankruptcy proceeding is determinative of the case. Judge McCune relied upon the case of *National Cash Register Company v. Miller*, 88 Pa. Superior Ct. 550, 553 (1926), where indeed it was held that: ". . . when the referee made the order directing the receivers to return the cash register to the plaintiff, it passed out of the custody of the law and immediately became subject to a distress by the defendant for rent in arrears so long as it remained on the demised premises."

We find that case unpersuasive and decline to follow it. Ordinary common sense requires that *custodia legis* continue until the order of the Referee could be effected. Otherwise the order of the Referee or bankruptcy court would be meaningless. The property would go to him who could get to it first after the order is made.

Moreover, even if the property had passed out of *custodia legis,* a distraint by appellants was no longer possible. The Referee in Bankruptcy had ordered that appellees were entitled to take possession of the dis-

---

[3] Appellees urge that any award to Peter Ciaffoni would constitute unjust enrichment, since his claim is based solely on his own repudiation of a promise and his brother's illegal acts in preventing the removal of the equipment on July 20, 1962.

puted property. This was an adjudication *in rem* binding on all who might claim an interest in the property, including appellants. "Adjudications of the referee, if not reviewed within the time and in the manner prescribed, have the force and effect of judgments and orders of the District Court." *In re Tinkoff*, 85 F. 2d 305, 307 (7th Cir. 1936), *cert. denied*, 299 U.S. 611. The manner prescribed is an appeal to the United States District Court. Appellants did not attack the Referee's adjudication in that way, and we will not permit a collateral attack here.

The order of the court below is affirmed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

Mr. Justice MUSMANNO did not participate in the decision of this case.

———

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I agree with the result reached by Mr. Justice O'BRIEN but for a reason other than the one stated.

In my view, no incident of the bankruptcy proceeding defeated Peter Ciaffoni's distraint lien. However, both landlords lost their distraint rights by contractual waiver which Brunswick may properly enforce as a third party donee beneficiary. Hence, I concur in the result.

Mr. Justice JONES joins in this opinion.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent from the majority's unsupported action in overruling the only Pennsylvania appellate authority controlling this controversy. The majority dismisses the unanimous decision of the Superior Court in *National Cash Register Company v. Miller*, 88 Pa. Superior Ct. 550 (1926), with the simple assertion: "We find that case unpersuasive and decline to follow it.

Ordinary common sense requires that *custodia legis* continue until the order of the Referee could be effected." The majority fails to indicate or even suggest just what its new concept of *continuation* of *custodia legis* entails; how long does the majority's extension theory continue after the referee's order terminating his custody of the property?

In *National Cash Register,* supra, at page 553, the Superior Court held that property ". . . will remain, by operation of law, in *custodia legis* until it is withdrawn from such custody by the order of a competent court: . . . But when the referee made the order directing the receivers to return the cash register to the plaintiff, it passed out of the custody of the law and immediately became subject to a distress of the defendant for rent in arrears *so long* as it remained on the demised premises." (Emphasis added.) Here the referee on July 5, 1962,[1] decided that the trustee had no interest in the property and that Brunswick was entitled to possession. Brunswick then waited 15 days *after* that order before attempting to take possession of the property which continued to remain on the premises of the landlord. Surely, the referee's order withdrawing the property from the bankrupt estate did not immunize the property from the right of distraint of the landlord for as long as Brunswick chose to keep the property on the demised premises.

The facts before this Court are virtually the same as in *National Cash Register.* I must conclude that appellant landlord Peter Ciaffoni[2] had the right to dis-

---

[1] The record shows the reclamation petition was only served on the trustee and not on the Ciaffonis.

[2] The right of distraint of Paul Ciaffoni, the other appellant, has been eliminated by waiver agreement executed by him with the appellees. Peter and Paul Ciaffoni were tenants in common and, under our law, where property is owned jointly, each owner may waive his right to distrain as to so much of the rent as represents

450

train.  I would remand the case for further proceedings on the merits to resolve the conflicting claims between the parties.  See Act of May 7, 1929, P. L. 1589, §1, as amended, 68 P.S. §322.  *In Re Quaker City Uniform Co.,* 238 F. 2d 155 (3d Cir. 1956); *Reinhart v. Gerhardt,* 152 Pa. Superior Ct. 229, 31 A. 2d 737 (1943); *Herman v. Osgood,* 103 Pitts. Leg. J. 231 (C.P. 1955).

Since under my view this record should return to the trial court, I would note that inherent in this case is a possible conflict between Articles 9-104(b) and 9-313(2) of the Uniform Commercial Code which may affect the proper resolution of this case.  Act of April 6, 1953, P. L. 3, §9, as amended, 12A P.S. §§9-104, 9-313.

Thus, I dissent.

his portion of it.  Unless expressly so authorized he could not execute a waiver in behalf of his joint owner.  Peter gave no such authority in this case.  Therefore, it must be concluded that Paul has waived his right of distraint, but that Peter has not.  *Bernstein v. Colletris,* 99 Pa. Superior Ct. 484 (1930).  See also *Wally v. Jones,* 275 Pa. 250, 119 Atl. 75 (1922); *Penrose v. Penn Forest Coal Co.,* 289 Pa. 519, 137 Atl. 670 (1927).